**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| VASHTI SHERROD, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-0816 (RC) |
| | : | | |
| v. | : | Re Document No.: | 16 |
| | : | | |
| PHILLIP MCHUGH, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING DISTRICT DEFENDANTS' PARTIAL MOTION TO DISMISS**

**I. INTRODUCTION**

This case involves allegations that, if true, drastically undermine the integrity of a District of Columbia police officer and illustrate the damage that the unscrupulous use of power can inflict upon citizens of the state. Vashti and Eugene Sherrod were involved in a routine traffic accident in the District of Columbia. According to the allegations in the complaint, the other driver falsely reported to police that Ms. Vashti Sherrod brandished a handgun after they discussed the accident. Detective Phillip McHugh allegedly discovered that the other driver's report was false, yet relentlessly used the criminal justice system to harass the Sherrods. When their defensive legal battles finally drew to a close, the Sherrods brought suit against the other driver, Det. McHugh, and the District of Columbia on multiple grounds, including for common law claims of assault, negligence, and negligent infliction of emotional distress. Det. McHugh and the District of Columbia move to dismiss these claims, contending that Det. McHugh did not assault the Sherrods through filing a false police report or fraudulent affidavit in support of an arrest warrant, that Plaintiffs did not properly plead their negligence claim and, in any event, that

their negligence claim is duplicative of their assault claim, and that the Sherrods were never in a "zone of danger," which is required to maintain a negligent infliction of emotional distress claim.

In large part because Defendants' arguments are factual in nature, the Court denies the motion to dismiss. Whether Det. McHugh "intentionally" caused the Sherrods to believe they would be harmed is a question best left for summary judgment or the factfinder. Additionally, Plaintiffs are entitled to allege, in the alternative, that Det. McHugh acted negligently. Finally, whether the Sherrods were actually in danger of physical harm through Det. McHugh's possible negligence is a question best left for a later stage of the proceedings, after the parties have engaged in factual discovery. The Court therefore denies Defendants' motion to dismiss.

## II.  FACTUAL BACKGROUND[1]

### A.  The Traffic Accident

In May 2015, Plaintiffs Vashti and Eugene Sherrod were involved in a minor traffic accident with Defendant Diane Schulz.[2] *See* Am. Compl. ("Compl.") ¶¶ 15–17, ECF No. 13. Both plaintiffs are elderly, and Mr. Sherrod is legally blind. *See* Compl. ¶ 4. According to Plaintiffs, when Ms. Schulz attempted to parallel park her truck, she collided with the side mirror of Plaintiffs' car. Compl. ¶¶ 16–17. After Ms. Sherrod and Ms. Schulz exited their vehicles to

---

[1] On February 8, 2017, Plaintiffs moved for leave to file a second amended complaint. *See* Mot. Leave File Second Am. Compl., ECF No. 32. If the Court were to grant this motion, it would not substantively change the claims Plaintiffs make against Det. McHugh or the District of Columbia. *See generally id.* For example, Plaintiffs added allegations that Det. McHugh emailed Ms. Schulz a copy of the police report and that Ms. Schulz failed to withdraw her claim. *See* Proposed Second Am. Compl. ¶ 26, ECF No. 32-3. And, although Plaintiffs refined certain factual allegations pertaining to the moving defendants, those changes do not affect the Court's analysis here. *See, e.g.,* Compl. ¶¶ 27, 30.

[2] The Court views the facts alleged in the complaint in the light most favorable to Plaintiffs. *See, e.g., Anderson v. Holder*, 647 F.3d 1165, 1174 (D.C. Cir. 2011).

deal with the accident, Ms. Schulz started yelling obscenities at Ms. Sherrod and "gesturing with her finger . . . in a threatening and menacing manner," at times retreating to her truck. Compl. ¶¶ 18, 20. Plaintiffs further allege that Ms. Schulz used racial epithets and that, when she opened the passenger door of her truck, the door struck Plaintiffs' car, causing further damage. Compl. ¶¶ 21–22. Eventually, after Ms. Schulz allegedly further cursed and "physically confronted" Ms. Sherrod, the parties exchanged insurance information and Ms. Schulz drove away. Compl. ¶ 22.

### B. Detective McHugh's Investigation

Later that day, Ms. Schulz called the D.C. Metropolitan Police Department about the incident. Compl. ¶ 23. MPD Detective Phillip McHugh—another defendant in this matter, employed by the Defendant District of Columbia (collectively, "District Defendants")—responded by visiting Ms. Schulz's house and interviewing her about the incident. Compl. ¶ 23. Ms. Schulz told Det. McHugh that following the accident, Ms. Sherrod threatened Ms. Schulz with "the barrel of [her] gun," and that Mr. Sherrod encouraged his wife as she threatened her. Compl. ¶ 23. Then, Ms. Schulz allegedly said that Ms. Sherrod "went to her car and reached under the driver's seat, pulling out . . . a black semi-automatic pistol similar to what a police officer would carry," and then pointed the pistol at Ms. Schulz and walked toward her "in a threatening manner." Compl. ¶ 23. After taking a statement from Ms. Schulz, Det. McHugh obtained and viewed video surveillance footage of the entire event between Ms. Schulz and the Sherrods. Compl. ¶ 24. The video that Det. McHugh carefully reviewed allegedly proves that Ms. Schulz's version of events was untrue. *See* Compl. ¶ 25. For the purpose of this motion, both parties seem to accept the allegation that the potential for probable cause evaporated upon Det. McHugh's viewing of the video. *See* District Defs.' Mem. P. & A. Supp. District Defs.' Mot. Partial Dismissal Am. Compl. ("Defs.' Mot. Dismiss"), ECF No. 16.

Just over a week later, Ms. Sherrod and Det. McHugh spoke over the telephone about the incident, and Ms. Sherrod told Det. McHugh that she did not own a gun and did not point a gun at Ms. Schulz.  Compl. ¶¶ 28–29.  Det. McHugh "persisted and told [Ms.] Sherrod that he could have searched her car, seized her vehicle, and had her arrested" days before.  Compl. ¶ 29.

According to Plaintiffs, Det. McHugh then filed a false official police report stating that the Sherrods' car was stolen, which caused a broadcast to be issued to all law enforcement personnel in the Washington metropolitan area.  Compl. ¶ 30.[3]  The broadcast stated that the Sherrods' car was stolen, and instructed police to "immediately stop and arrest the driver" if they saw the car.  Compl. ¶ 30.  In late June, Det. McHugh contacted the police department in Prince George's County, Maryland, about applying for a search warrant of the Sherrods' home.  Compl. ¶ 31.  In doing so, Plaintiffs allege, Det. McHugh falsely stated that the video he viewed corroborated Ms. Schulz's account, which the Maryland police officer used in his affidavit in support of the warrant.  Compl. ¶ 32.  Relying on the affidavit, a Maryland judge issued a warrant for the police to search the Sherrods' home.  Compl. ¶ 32.

### C. The Capitol Police Stop

The same day that the warrant was issued, the Sherrods drove their car through the District of Columbia, where they were pulled over by two United States Capitol Police patrol cars.  Compl. ¶ 34.  After Ms. Sherrod pulled her car over to the curb, three police officers approached, and two of them pointed shotguns at Mr. and Ms. Sherrod.  Compl. ¶ 34.  The lead Capitol Police officer told Ms. Sherrod that there was a report that their car was stolen, which Ms. Sherrod immediately denied.  Compl. ¶ 35.  The officer then said that he was "not going to

---

[3] In their proposed second amended complaint, Plaintiffs allege that Det. McHugh's report actually stated that the Sherrods' car was a "felony vehicle."  Proposed Second Am. Compl. ¶ 27.  This proposed amendment does not affect the Court's analysis.

4

arrest any 'senior citizens' and instructed them to wait inside the car." Compl. ¶ 35 A few minutes later, Det. McHugh arrived on the scene, ordered the Sherrods out of their car, and said "Remember me?  I am going for your gun and [to] seize your vehicle." Compl. ¶ 36.  After searching the car, Det. McHugh did not find a gun or any other contraband.  Compl. ¶ 36  Plaintiffs were so visibly upset by the ordeal that the lead Capitol Police officer consoled Mr. Sherrod.  Compl. ¶ 36.  The time from when the Sherrods were pulled over until they were released lasted approximately 90 minutes.  Compl. ¶ 37.

### D.  The Search of the Sherrod Home

Just over a week later, at approximately 9:00 p.m. on a weeknight, MPD Det. McHugh, along with a group of Maryland police officers, conducted a search of Plaintiffs' home.  Compl. ¶ 38.  Plaintiffs, in bed when police arrived, were awakened by pounding on their front door and flashing lights visible through their windows.  Compl. ¶ 38.  According to Plaintiffs, the police "either purposefully or negligently" failed to announce their presence and did not give them a chance to open the door before entering their home.  Compl. ¶ 38.  Thus, the Sherrods thought that they might have been experiencing a home invasion and feared for their safety.  Compl. ¶ 39.  After the police kicked in the door, they handcuffed Mr. Sherrod and told Ms. Sherrod to put her hands over her head.  Compl. ¶ 39.  Because of his blindness, Mr. Sherrod could not see who was in his home.  Compl. ¶ 39.  Before the search began in earnest, Det. McHugh ordered Plaintiffs to produce their guns and ammunition.  Compl. ¶ 40.  When they responded that they did not have any guns or ammunition, Det. McHugh responded by saying that the "search is on." Compl. ¶ 40.  Det. McHugh told Plaintiffs that they could not leave until he permitted them to, then personally searched their home.  Compl. ¶ 41.  According to Plaintiffs, Det. McHugh

unnecessarily and negligently caused damage to their property.  Compl. ¶ 41.  Det. McHugh did not find any evidence relating to firearms or ammunition.  Compl. ¶ 41.

### E.  The Criminal Case Against Ms. Sherrod

Later in the week, despite not finding any evidence in the course of his search, Det. McHugh swore a complaint against Ms. Sherrod and an affidavit in support of an arrest warrant, which plaintiffs allege Det. McHugh knew was false.  Compl. ¶¶ 42–43.  After a judge issued the warrant, Ms. Sherrod surrendered herself to police.  Compl. ¶ 46.  Later that day, a District of Columbia Superior Court magistrate judge released her on her personal recognizance.  Compl. ¶ 47.  At a later preliminary hearing, Det. McHugh allegedly offered the false testimony that his report stated that the Sherrods' car was merely involved in a crime, which Plaintiffs contend was both factually untrue and misleading.  Compl. ¶¶ 49–50.

The government's case against Ms. Sherrod unraveled at the grand jury stage.  Det. McHugh told Ms. Schulz that "the tape corroborated [her] statement," causing her to go through with grand jury testimony against the Sherrods that she later stated she "would never have [made]" had she known that the tape did not actually support her testimony.  Compl. ¶ 54.  The grand jury ultimately did not indict Ms. Sherrod.  Compl. ¶ 55.  The D.C. U.S. Attorney's Office terminated its prosecution in early 2016.  Compl. ¶ 55.

### III.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  Instead, plaintiffs must "nudge[] their claims across the

line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although trial courts must accept all well-pled facts in a complaint as true, plaintiffs have an "obligation to provide . . . more than labels and conclusions." *Id.* at 555.

### IV. ANALYSIS

The Sherrods brought this case on multiple federal-law and common-law grounds. *See* Compl. ¶ 1. Only some of the common law claims are relevant to this motion.[4] The Sherrods claim that the District Defendants tortiously assaulted them when Det. McHugh "and/or police officers acting on his behalf and/or direction" "engaged in harmful and offensive conduct" when they pointed shotguns at them during the Capitol Police stop. *See* Compl. ¶ 91. They further claim they were assaulted when Det. McHugh and other officers "acting on his behalf and/or direction" kicked in their door without announcing themselves, on the basis of a warrant that Det. McHugh knew was invalid. Compl. ¶ 92. Plaintiffs separately claim that Det. McHugh was negligent in violating MPD policies governing applications for search and arrest warrants, and in violating Plaintiffs' constitutional rights. Compl. ¶ 100. They further claim that Det. McHugh was negligent in his search of their home, causing them a variety of damages. *See* Compl. ¶¶ 102–05. Finally, Plaintiffs claim that Det. McHugh negligently inflicted emotional distress ("NIED") upon them in many ways throughout the ordeal.[5] *See* Compl. ¶¶ 107–17.

---

[4] Because Plaintiffs argue and Defendants concede that District of Columbia law applies, *see* Pls.' Opp'n District Defs.' Mot. Partial Dismissal Am. Compl. ("Pls.' Opp'n") at 17–19, ECF No. 17; Defs.' Reply Pls.' Opp'n to Partial Mot. Dismiss & Partial Summ. J. ("Defs.' Reply"), ECF No. 20, the Court applies District of Columbia law. *Nguyen v. Voorthuis Opticians, Inc.*, 478 F. Supp. 2d 56, 60 n.2 (D.D.C. 2007).

[5] Defendants' memorandum in support of its motion to dismiss identifies Count 10 as one for "Negligent Infliction of Emotional Distress ("IIED" [sic])," but Count 10 was Plaintiffs' claim for intentional infliction of emotional distress ("IIED"). *See* District Defs.' Mem. P. & A. Supp. District Defs.' Mot. Partial Dismissal Am. Compl. ("Defs.' Mot. Dismiss") at 2, ECF No.

District Defendants seek dismissal of the above counts on multiple grounds.[6]  *See* Defs.' Mot. Dismiss.[7]  The assault claims, they argue, are deficient because Det. McHugh did not engage in any action that he knew would give rise to an apprehension of imminent contact.  *See* Defs.' Mot. Dismiss at 5–7.  District Defendants further argue that Plaintiffs' negligence claims did not include allegations of breach and did not set forth standards of care separate from those of intentional torts.  *See* Defs.' Mot. Dismiss at 7–9.  In addition, District Defendants contend that Plaintiffs' NIED claims fail because the Sherrods were never in the "zone of danger."  *See* Defs.' Mot. Dismiss at 9–12.

The Court finds that facts learned during discovery could lead a reasonable jury to find that Det. McHugh knew with substantial certainty that his allegedly false police report would

---

16; Compl. at 29, ECF No. 13.  However, the motion does not otherwise advocate for the dismissal of Count 10.  *See* Defs.' Mot. Dismiss.  The Court thus assumes that Defendants simply mislabeled Count 10.

[6] Although District Defendants originally sought dismissal of the malicious prosecution claims, *see* Defs.' Mot. Dismiss at 3–5, they have since withdrawn their argument.  *See* Defs.' Reply at 9.  Notably, Defendants label their reply as a reply in support of a motion for partial dismissal and partial summary judgment, but the original motion was only for partial dismissal.  *See* Defs.' Mot. Partial Dismissal of Am. Compl. at 1, ECF No. 13.  The Court disregards the reference to summary judgment in the title of Defendants' reply.

[7] Puzzlingly, Defendants assert that "Plaintiffs did not address and thus concede that Section 12-309 bars Mr. Sherrod's common law claims against the District and their intentional infliction of emotional distress claims."  Defs.' Reply at 1–2.  Defendants never raised any claims associated with "Section 12-309" in their motion to dismiss.  *See* Defs.' Mot. Dismiss.  In fact, in their reply Defendants cite to page numbers that do not even exist in the memorandum in support of the motion under consideration.  *Compare id.* with Defs.' Reply at 1.  Defendants did, however, raise these issues in a previously-filed motion to dismiss.  *See* Mot. Dismiss Counts III, IV, V, VII, and IX at 14–16, ECF No. 10.  However, the Court dismissed this motion as moot following Plaintiffs' filing of a new complaint.  *See* Order Den. Without Prejudice Mot. Dismiss Counts III, IV, V, VII, and IX, ECF No. 18.  Because any such argument was not raised in Defendants' active motion to dismiss, the Court will not address it.  *See Walker v. Pharm. Research & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006) ("Because the plaintiff only addresses this particular claim in her reply to the motion . . ., the plaintiff has waived the argument.").

lead to the apprehension of imminent harmful contact by the Sherrods, and that he knew with substantial certainty that the Sherrods would fear imminent contact during his allegedly unjustified search of their home.  However, because discovery could also reveal that it was merely foreseeable that the alleged injuries would occur, the Sherrods have also plausibly stated a claim for negligence.  Plaintiffs' negligence claims, moreover, despite not containing a ritualistic recitation of the "default" standard of care, put District Defendants on sufficient notice of their claims, and thus were well pled.  Finally, Plaintiffs adequately pled an NIED claim, because they adequately allege facts that, if true, could support a claim that Det. McHugh's actions placed the Sherrods in danger of physical harm.  Accordingly, District Defendants' motion to dismiss will be denied.

### A.  Assault Claim Against Det. McHugh

The parties first dispute whether any of Det. McHugh's actions constituted assault. Defs.' Mot. Dismiss at 5–6.  Specifically at issue is whether Det. McHugh can be held liable for Capitol Police when they pointed shotguns at the Sherrods and for the actions of the police in kicking down the Sherrods' door.  *Id.* at 6.  District Defendants contend that the complaint never alleges that Det. McHugh actually ordered the Capitol Police to point their shotguns at the Sherrods or that he kicked in their door, and that because Plaintiffs were in bed, they could not have reasonably concluded that the door being kicked in posed a physical threat to them.  *Id.* at 7.  Plaintiffs respond that Det. McHugh created an unreasonable risk of harm through the Capitol Police, because he knew that "there was a high probability that any officers engaged in stopping and seizing an alleged felony vehicle would respond with their weapons drawn, exactly as officers did in this case."  *See* Pls.' Opp'n District Defs.' Mot. Partial Dismissal Am. Compl.

("Pls.' Opp'n") at 25–27, ECF No. 17.  They also argue that Det. McHugh led the search of Plaintiffs' home, which reasonably caused them to fear for their safety.  *See id.* at 28–29.

To successfully plead assault, a plaintiff must plausibly show that the defendant intentionally created "an imminent apprehension of . . . a harmful or offensive . . . contact," and that the plaintiff did indeed experience such an apprehension.  *Jackson v. District of Columbia*, 412 A.2d 948, 956 (D.C. 1980); *accord Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007) (favorably citing *Jackson* for the definition of assault); Restatement (Second) of Torts § 21; *see also Person v. Children's Hosp. Nat. Med. Ctr.*, 562 A.2d 648, 650 (D.C. 1989) ("An assault results from apprehension of an imminent harmful or offensive contact, in contrast with the contact itself.").  A defendant acts intentionally if he knows with substantial certainty that a harmful or offensive apprehension will result from his action.  *See Konah v. District of Columbia*, 915 F. Supp. 2d 7, 23 (D.D.C. 2013) (quoting Restatement (Second) of Torts § 18, cmt. e).  A tortfeasor may intentionally create such an apprehension through the actions of a third party.  *See* Restatement (Second) of Torts § 25, cmt.; *accord Judah v. Reiner*, 744 A.2d 1037, 1042 n.8 (D.C. 2000).  Thus, if a defendant acts knowing with substantial certainty that his actions will cause a third party to create the apprehension of imminent harmful or offensive contact in another, he is liable for assault.

Plaintiffs' assault claim against Det. McHugh related to the Capitol Police stop survives the motion to dismiss.  District Defendants erroneously assume that Det. McHugh must have actually commanded the officers to point their shotguns at the Sherrods.  Not so.  It suffices for Plaintiffs to plead facts plausibly showing that Det. McHugh knew with substantial certainty that

his filing of a false official police report would lead to the creation of an injurious apprehension.[8] *See Jackson*, 412 A.2d at 956; *Judah*, 744 A.2d at 1042 n.8. Whether he did so here presents several questions to be explored during discovery. But for now, Plaintiffs have adequately pleaded that Det. McHugh knew with substantial certainty that his broadcasting of an official, internal MPD report would lead to police stopping the Sherrods' vehicle. Additionally, they have adequately pleaded that Det. McHugh knew with substantial certainty that the broadcast would include the order for police to arrest the Sherrods, and that in effectuating the arrest harmful or offensive contact would result.[9] Thus, Plaintiffs have stated a cognizable claim for assault for the alleged Capitol Police stop.

Plaintiffs also state a claim for the search of the Sherrods' home. Regardless of whether Det. McHugh actually kicked down their door, Plaintiffs have sufficiently pleaded that Det. McHugh knew with substantial certainty that the Sherrods would experience the requisite mental disquiet as a result of the search. Det. McHugh allegedly provided false information to Maryland police for the purpose of obtaining a search warrant. Compl. ¶¶ 31–32. After obtaining the search warrant, the police, during nighttime hours and "led by Det. McHugh," kicked in the door without knocking or announcing who they were. Compl. ¶¶ 38–39. When the

---

[8] District Defendants argue that merely showing "foreseeability" is insufficient to show tortious intent. *See* Defs.' Reply at 4. This is true but inapposite. Plaintiffs do not claim that it was merely "foreseeable" that the apprehension of imminent contact would occur, but that Det. McHugh "knew" that the stop would occur and that there was a "high probability" that weapons would be drawn because officers "routinely" behave this way. *See* Pls.' Opp'n at 27. Although discovery could uncover facts suggesting that the injury was merely foreseeable, it would also be possible for it to show that Det. McHugh knew with substantial certainty that it would result.

[9] In their opposition to the motion to dismiss, Plaintiffs assert that it is "common knowledge" that officers "routinely" point their firearms at potential arrestees. *See* Pls.' Opp'n at 27. Predictably, District Defendants take issue with this assertion. *See* Defs.' Reply at 3. This reasonable dispute is a prototypical example of an issue appropriately left for a later stage of these proceedings, after discovery is conducted and experts have been retained.

door was kicked open, Plaintiffs allegedly feared for their safety. Compl. ¶ 39. Police ordered them to put their hands up. *Id.* Thus, Plaintiffs have sufficiently pleaded that Det. McHugh, through fraudulently seeking a search warrant and leading a search of Plaintiffs' home that involved the unannounced kicking in of their door, knew with substantial certainty that the Sherrods would fear that they were imminently going to be harmfully touched. As for the contention that the Sherrods could not have perceived imminent contact because they were in bed, this stage of litigation is ill-suited for the question.[10] The Sherrods have alleged that they cowered in fear, thinking that their home was being forcibly invaded. Although it is certainly possible that the Sherrods did not actually apprehend imminent contact, that possibility is yet another issue to be explored in discovery. Thus, District Defendants' motion to dismiss Plaintiffs' assault claims must be denied.

### B. Negligence Claims

The Court next addresses whether Plaintiffs have adequately pled negligence against Det. McHugh. The Court first analyzes whether Plaintiffs allege a violation of a viable standard of care, then turns to the issue of whether the negligence claim is sufficiently distinct from Plaintiffs' intentional tort claims.

#### 1. Duty and Breach

District Defendants move to dismiss on the grounds that Plaintiffs do not adequately allege that Det. McHugh breached any viable duty, because the complaint cites only MPD

---

[10] Moreover, viewing the facts alleged in the light most favorable to the Sherrods, Plaintiffs have also sufficiently pleaded facts from which a factfinder could infer that Det. McHugh knew with substantial certainty that he or other officers would engage in the offensive touching of the Sherrods through handcuffing them. Because Det. McHugh allegedly acted in bad faith and without probable cause, he would not have been justified in engaging in or ordering such force. *See Jackson v. District of Columbia*, 412 A.2d 948, 954 (D.C. 1980). However, because Plaintiffs did not raise this issue in opposition, the Court need not address it.

policies and procedures, which do not constitute duties *per se*. Defs.' Mot. Dismiss at 7. In their amended complaint, Plaintiffs allege that Det. McHugh owed a duty to the Sherrods to follow MPD policies and the constitution, and breached his duty by subjecting them to unlawful seizures, searches, and property damage during his search of their home. Compl. ¶¶ 97–103, 146–151. Because both parties agree that MPD policies and procedures do not create a *per se* duty, *see* Defs.' Mot. Dismiss at 7–8; Pls.' Opp'n at 35, the issue here boils down to whether Plaintiffs were required to specify that Def. McHugh owed the Sherrods the "default" duty of reasonable care in their complaint.

"A uniform standard of care applies in actions for negligence: reasonable care under the circumstances." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982). However, as part of the "circumstances" under which reasonableness is determined, the court must consider "that those with special training and experience adhere to a standard of conduct commensurate with such attributes." *Id.* (quoting *Morgan v. District of Columbia*, 449 A.2d 1102, 1108 (D.C. 1982), *vacated on other grounds*, 452 A.2d 1197 (D.C. 1982)). Thus, police officers' standard of care is that of a reasonable police officer under the circumstances. *See Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 44 (D.D.C. 2015). Although police department policies and orders are generally insufficient to establish a freestanding duty that can give rise to claims of negligence *per se*, such regulations may be probative on whether an officer conformed to the general standard of care applicable to police officers. *See id.*; *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996) (enumerating the elements of negligence *per se*).

Federal Rule of Civil Procedure 8(a) provides that "a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Because a uniform standard of care applies in actions for negligence in the District of Columbia, a plain

reading of the requirements of Rule 8 produces the conclusion that Plaintiffs need not engage in a formal recitation of the elements for negligence in order to properly plead a plausible claim for relief.  *See Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1352 (S.D. Fla. 2008) ("This Court concludes that under . . . Federal Rule of Civil Procedure 8, Plaintiffs are not required to allege the applicable standard of care in their complaint.  [Because] Defendant . . . is on notice of the general nature of Plaintiffs' negligence claim, [the defendant's] request to dismiss that claim is denied.").

Although Plaintiffs did not formally identify the duty element in their complaint, they have plausibly claimed that Det. McHugh owed the Sherrods the "default" duty of reasonable care under the circumstances, and that he breached that duty.  Det. McHugh had a duty to behave as a reasonable and prudent police officer under the circumstances.  *See Kenley*, 83 F. Supp. 3d at 44.  That duty is informed by the specific standards that a reasonable and prudent police officer would observe.  *See id.*  MPD policies are relevant standards for determining how a reasonable officer would have behaved under the circumstances.  *See id.*  Like in *Kenley*, though "Defendants focus on whether violations of an MPD General Order can constitute negligence *per se* . . ., that is beside the point.  Plaintiff[s] [are] not asserting that the [MPD policies are] statute[s] or regulation[s] that establish[] negligence *per se*. . . .  Plaintiff[s] allege[] that [Det. McHugh] failed to exercise the standard of care of a reasonably prudent police officer."  83 F. Supp. 3d at 44.  Plaintiffs have alleged that Det. McHugh breached his duty of reasonable care when he swore a false affidavit in support of a search warrant that foreseeably led to an illegal search and caused unnecessary damage during that search.  *See* Compl. ¶¶ 100–03.  The same is true for when he allegedly caused Ms. Sherrod to be unlawfully arrested through his allegedly fraudulent affidavit in support of arrest.  *See* Compl. ¶ 151.  At this stage of the proceedings,

before expert witnesses have been identified and expressed their opinions about the applicable standard of care, no more is required. Accordingly, Plaintiffs have plausibly alleged a duty and breach in support of their negligence claims.

2. Negligence Claims *vis a vis* Intentional Tort Claims

District Defendants also contend that Plaintiffs have not pled a breach that is distinct from the alleged intentional torts. *See* Mot. Dismiss at 7–8. As noted above, Plaintiffs allege that Det. McHugh negligently subjected them to unlawful searches and seizures, damaged their property by negligently searching their house, and negligently subjected Ms. Sherrod to an unlawful arrest. *See* Compl. ¶¶ 95–105; 145–53.

Under District of Columbia law, a plaintiff who asserts claims for both assault and negligence must plead such that the negligence claim is (1) "distinctly pled" and (2) based upon at least one factual scenario that presents an aspect of negligence" distinct from the assault itself. *See Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 30 (D.D.C. 2011). This rule exists because of the different states of mind that each claim requires. "As the saying goes, there is no such thing as a negligent battery." *District of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003) (quoting Dobbs, Law of Torts § 26 at 51 (2001)). In *Dormu v. District of Columbia*—the case that District Defendants cite in their motion—the plaintiff claimed that a police officer "either intentionally or recklessly" put handcuffs on a suspect too tightly. 795 F. Supp. 2d at 30. Finding it plausible that the officer either recklessly believed that the handcuffs were not too tight or intentionally made them too tight, the Court concluded that the plaintiff's evidence "viewed in a light most favorable to him, [could] support these two scenarios" and allowed both a battery and negligence claim to proceed. *Id.*

The facts here, like those in *Dormu*, could support either of Plaintiffs' two theories. As District Defendants argue in support of their motion to dismiss the assault claims, it is possible that "[e]ven if [Det.] McHugh [did] file[] a police report concerning a stolen vehicle, it does not establish his intent to threaten or attempt to have Capitol Police Officers draw weapons upon Plaintiffs." *See* Defs.' Reply at 3. Discovery could reveal that District Defendants are correct that Det. McHugh was not intentionally harming Plaintiffs, but it could also reveal that he was acting recklessly or negligently. The same is true for the alleged illegal search; Plaintiffs contend that Det. McHugh "either purposefully or negligently" failed to announce that the police were present before knocking down Plaintiffs' door. *See* Compl. ¶ 38. Plaintiffs have therefore stated plausible claims for negligence.

### C. Negligent Infliction of Emotional Distress Claims

The Court next addresses whether Plaintiffs have stated a NIED claim. District Defendants claim that Plaintiffs do not plausibly allege that they were in actual physical danger with respect to the searches of the Sherrods and Ms. Sherrod's original arrest. *See* Mot. Dismiss at 11.[11]

To state a cognizable NIED claim under District of Columbia law, a plaintiff must show that (1) the plaintiff was in a zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for her own safety, and (4) the emotional distress so caused was serious and verifiable. *See Rice v. Dist. of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011). For plaintiffs to be in the actual zone of danger, a defendant must have "*actually* expose[d] them to danger." *Arias v. DynCorp*, 752 F.3d 1011, 1018 (D.C. Cir. 2014) (citing *Williams v.*

---

[11] Defendants concede that the alleged Capitol Police stop would satisfy the "zone of danger" standard. *See* Defs.' Mot. Dismiss at 11.

*Baker*, 572 A.2d 1062, 1064 (D.C. 1990)).  In line with the "strong public policy considerations [that] counsel against imposing 'virtually infinite liability' for negligent conduct," the "zone of danger" test is stringent.  *Mackey v. United States*, 8 F.3d 826, 831 (D.C. Cir. 1993) (quoting *Cauman v. George Washington Univ.*, 630 A.2d 1104, 1107 (D.C. 1993)).  Showing reasonable fear for one's safety suffices to satisfy the "zone of danger" element.  *See Asare v. LM-DC Hotel, LLC*, 62 F. Supp. 3d 30, 35 (D.D.C. 2014).  Such a fear may be based upon "a high risk . . . of physical impact."  *Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 697 (N.D. Ill. 2012).  "A classic example is that of the reckless driver who speeds by a pedestrian, missing her by only inches."  *Arias*, 752 F.3d at 1017.  In the context of false arrests, "[a] reasonable jury could . . . conclude[] . . . that . . . [an officer's] negligent conduct in effecting [a] false arrest . . . create[s] a zone of danger and caused [the arrestee] to fear for [the arrestee's] safety, resulting in emotional distress."  *David v. District of Columbia*, 436 F. Supp. 2d 83, 90 (D.D.C. 2006).

For many of the previously-cited reasons, Plaintiffs have stated plausible claims for negligent infliction of emotional distress.  Plaintiffs allege that Det. McHugh conducted a search in a manner "that caused Plaintiffs extreme fear for their physical safety . . . [because] they believed they were experiencing a home invasion."  *See* Comp. ¶¶ 109–11.  Given that the police allegedly did not announce their presence and conducted the search during the night, Plaintiffs have sufficiently alleged that Det. McHugh's fraudulent obtaining of a search warrant and subsequent search caused Plaintiffs to reasonably fear for their safety and expect unwanted physical touching during the course of a brazen home invasion.  The devil may be in the details and discovery will provide the parties and the Court with those details.  The same is true for the other searches and arrest.  District Defendants do not argue that Det. McHugh had probable cause or was otherwise justified in searching the Sherrods or in seeking Ms. Sherrod's arrest;

"physical impact" can be harmful whether it is inflicted by a person in a police uniform or not. *See David*, 436 F. Supp. 2d at 90.  Thus, Plaintiffs have sufficiently pleaded that Det. McHugh negligently created a zone of physical danger that Plaintiffs occupied, causing them to fear for their safety.  As such, District Defendants' motion to dismiss this claim is denied.

## V.  CONCLUSION

For the foregoing reasons, District Defendants' Motion for Partial Dismissal of the Amended Complaint is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 15, 2017                                                                 RUDOLPH CONTRERAS
                                                                                                              United States District Judge