# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

VASHTI SHERROD                          :
EUGENE SHERROD,                         :
                                        :
      Plaintiffs,                 :  Civil Action No. 16-816 (RC)
  v.                                    :
                                        :
PHILLIP MCHUGH                          :  **SECOND AMENDED**
DISTRICT OF COLUMBIA                    :  **COMPLAINT AND JURY**
DIANE LEE SCHULZ,                       :  **DEMAND**
                                        :
      Defendants.                 :

## JURISDICTION AND VENUE

1.      This action arises under the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988.  Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1332, 1343 and 2201.  This Court also has supplemental jurisdiction over related District of Columbia common law claims pursuant to 28 U.S.C. § 1367, in that the common-law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District of Columbia.

**EXHIBIT 2**

**PLAINTIFFS**

3.    Plaintiffs Vashti Sherrod and Eugene Sherrod are citizens of the United States and reside at 920 Lake Front Drive, Mitchellville, Maryland 20701. They were married in 1982.

4.    Plaintiff Vashti Sherrod is age 77; Plaintiff Eugene Sherrod is age 74 and legally blind. Plaintiffs are African American.

5.    Plaintiffs bring this action to redress deprivations of the rights secured to them by the United States Constitution and the common law of the District of Columbia caused by the Defendants.

**DEFENDANTS**

6.    Defendant Phillip McHugh (hereinafter "McHugh") is a citizen of the United States and a resident of the Commonwealth of Virginia.  Defendant McHugh is Caucasian.

7.    At all relevant times, Defendant McHugh was a duly licensed police officer and was employed as a detective by Defendant District of Columbia in the District of Columbia Metropolitan Police Department (hereinafter "MPD").

8.    At all relevant times, Defendant McHugh was an employee acting under the color of law within the scope of his employment with the District of Columbia and MPD.

9.      Defendant McHugh is being sued in his official capacity and in his individual capacity.

10.      Defendant District of Columbia is a municipal corporation organized pursuant to the laws of the United States, with the authority to sue and be sued, and the local government for the territory constituting the permanent seat of the federal government of the United States.

11.      At all relevant times, Defendant District of Columbia was responsible for the operation of the MPD as a department of the local government.

12.      At all relevant times, Defendant District of Columbia was responsible for the policies, procedure, rules, regulations, and customs set forth and utilized for the operation of the MPD.

13.      Defendant Diane Lee Schulz (hereinafter "Schulz") is a citizen of the United States and resides at 560 N Street, SW, Washington, DC 20024.  Defendant Schulz is Caucasian.

## ALLEGATIONS COMMON TO ALL COUNTS

14.      Plaintiff Vashti Sherrod and her husband, Plaintiff Eugene Sherrod, own a Mercedes-Benz sedan, which they purchased in 2000 (hereinafter the "Mercedes"). On May 14, 2015, at approximately 11:00 a.m., Plaintiff Vashti Sherrod parked the Mercedes in a curb lane parking space in front of 911 11th Street, SE in the District of Columbia, where a flower store she had planned to visit is located.  Plaintiff

3

Eugene Sherrod was traveling with his wife and was seated in the Mercedes' front passenger seat.

15.    Moments after Plaintiff Vashti Sherrod parked the Mercedes, Defendant Schulz stopped her Isuzu Trooper truck (hereinafter the "Truck") next to the Mercedes and attempted to parallel park the Truck behind the Mercedes.

16.    As Defendant Schulz began to back the Truck up to park, Plaintiff Vashti Sherrod was still seated in the driver's seat of the Mercedes and saw that Schulz was about to collide with her vehicle.  Plaintiff Vashti Sherrod's car window was closed, but she nevertheless tried to get Schulz's attention by yelling "stop."

17.    Schulz did not stop until after the Truck collided with the driver's side mirror of the Mercedes.

18.    After the collision, Plaintiff Vashti Sherrod and Defendant Schulz exited their vehicles.  Plaintiff Vashti Sherrod saw that Schulz's truck had struck and damaged the driver's side mirror of the Mercedes and pointed out the property damage to Schulz.  Schulz responded by shouting obscenities at Plaintiff Vashti Sherrod.

19.    Plaintiff Vashti Sherrod was shocked and frightened by Defendant Schulz's behavior but tried to remain calm as she attempted to exchange insurance and vehicle information with Defendant Schulz.

20.     Defendant Schulz repeatedly retreated to her truck and came back toward Plaintiff Vashti Sherrod shouting obscenities and gesturing with her finger toward Plaintiff Vashti Sherrod in a threatening and menacing manner.

21.     During this encounter, Defendant Schulz stated that her dog had just died and that her husband had just left her for another woman.  Defendant Schulz said "he did not leave me for a black nigger woman like you, he likes white women." Plaintiff Eugene Sherrod heard the entire conversation between his wife and Defendant Schulz.

22.     Defendant Schulz then opened her front passenger door to get back into the Truck and hit the front left fender of the Mercedes with the door in the process, causing additional damage to the fender of the Mercedes.  As Plaintiff Vashti Sherrod walked to the rear of the Mercedes to inspect it for other damage, Defendant Schulz continued to curse at her and physically confronted her at least three times. By that time, the parties had exchanged insurance information. Defendant Schulz then got into the Truck and drove away from the scene.  At no time during the encounter was the Mercedes operated or moved.

23.     Later on May 14, 2015, Defendant Schulz called the MPD First District Station located near her home.  Soon thereafter, Defendant McHugh came to Defendant Schulz's home and met with her.  During their meeting, Defendant Schulz

falsely told Defendant McHugh that the following events had occurred after her

collision with Plaintiffs' Mercedes that morning:

> After writing down the insurance information, [Schulz] again asked for
> Vashti Sherrod's name. Sherrod replied, 'I'm not going to give you my
> name. I'm going to give you the barrel of my gun.' At that time, Eugene
> Sherrod encouraged his wife by saying, 'Yeah, yeah, get it, get it.'
> [Schulz] didn't take this threat seriously at first because the Sherrod's
> both appeared to be in their 80s. However, Vashti Sherrod went to her
> car and reached under the driver's seat, pulling out what [Schulz]
> described as a black semi-automatic pistol similar to what a police
> officer would carry. Vashti Sherrod pointed the pistol at her and began
> walking toward her in a threatening manner. [Schulz] walked to the rear
> of her own car, heading to the driver's side to get away from Vashti
> Sherrod, who followed her to the back of the car. [Schulz] got in her car
> and left the scene.

24.     Thereafter, Defendant McHugh, as he did assiduously throughout his

investigation, took his time and located and obtained a 17-minute video surveillance

recording that captured the entire interaction between Plaintiff Vashti Sherrod and

Defendant Schulz at the scene of the May 14, 2015 traffic accident (hereinafter the

"video" and "video recording").

25.     Defendant McHugh viewed the video recording in its entirety and knew,

or should have known, that the video did not corroborate the allegations that

Defendant Schulz had asserted against Plaintiff Vashti Sherrod when Defendant

McHugh interviewed Defendant Schulz on May 14, 2015.

26.     On May 16, 2015, Plaintiff Vashti Sherrod arrived home and found a

business card in her mailbox that had been left there by Defendant McHugh. On the

back of the card, Defendant McHugh had handwritten a note to Plaintiff that asked her to call him at the telephone number listed on his card.  Later that day, Defendant McHugh emailed a copy of the police report he had filed based on Defendant Schulz's representations and advised her that he was investigating her claim against Plaintiff Vashti Sherrod as an assault with a dangerous weapon. Even after receiving this email, Defendant Schultz failed to withdraw her claim against Plaintiff Vashti Sherrod, even though she knew or should have known that there was no factual basis upon which to accuse Plaintiff Vashti Sherrod of assault with a dangerous weapon, a felony.

27.    On May 16, 2015, Defendant McHugh filed a false official MPD police report stating that the Mercedes was a "felony vehicle."  McHugh's report was sent to the MPD Communication Division and placed into the Washington Area Law Enforcement System ("WALES") and National Crime Information Center ("NCIC") computer databases.  This caused materially false information to be broadcast notifying all law enforcement personnel in the Washington, D.C. metropolitan area and nationwide that Plaintiffs' Mercedes was a felony vehicle and instructing all police officers who located the vehicle to immediately stop and "secure the vehicle for forensic processing, hold all occupants [and] contact Investigator Phillip McHugh of the First District Detectives Unit."

28.    Over the next several days, Plaintiff Vashti Sherrod called and left messages for Defendant McHugh on his telephone's voicemail.  McHugh did not respond to the telephone messages that she left for him.

29.    On May 21, 2015, Plaintiff Vashti Sherrod was finally able to reach Defendant McHugh by telephone.  McHugh explained to her that he was investigating a complaint from Defendant Schulz alleging that Plaintiff Vashti Sherrod had pointed a gun toward Defendant Schulz in the aftermath of the May 14, 2015 motor vehicle collision and that the alleged assault had been captured on videotape.

30.    In her telephone conversation with Defendant McHugh, Plaintiff Vashti Sherrod emphatically told Defendant McHugh that she did not own a gun and had not pointed a gun at Defendant Schulz at any time.  Defendant McHugh persisted and told Plaintiff Vashti Sherrod that he could have searched her car, seized her vehicle, and had her arrested on the day he left his card in her mailbox.

31.    On June 23, 2015, Defendant McHugh contacted Detective Simmons of the City of Bowie Police Department and convinced him to file an application in the Circuit Court for Prince George's County, Maryland for a "Knock Search and Seizure Warrant" for Plaintiffs' home.

32.    Defendant McHugh gave information about Plaintiffs to Detective Simmons that he knew, or should have known, was unverified and materially false,

including, but not limited to, the materially false allegations made by Defendant Schulz against Plaintiff Vashti Sherrod on May 14, 2015, set forth in Paragraph 23, *supra*.  He further mislead Detective Simmons by telling him that the video corroborated Defendant Schulz's allegations against Plaintiff Vashti Sherrod when, in fact, it did not.  Detective Simmons included all of the materially false information provided to him by Defendant McHugh in the affidavit that he signed and presented to Prince George's County Circuit Court Judge Michael P. Whalen.  Based on the materially false information contained in the affidavit, Judge Whalen issued a search warrant for Plaintiffs' home at 11:20 a.m. on June 29, 2015.

33.    On the morning of June 24, 2015, Plaintiff Vashti Sherrod took her Mercedes for routine maintenance service at Euro Motorcars in Bethesda, Maryland. After the car had been serviced, Plaintiff began to drive home with her husband, Plaintiff Eugene Sherrod, seated next to her. Her route home took her through the District of Columbia.

34.    At or about 1:15 p.m. on June 24, 2015, as Plaintiffs' Mercedes neared the Library of Congress building on Pennsylvania Avenue, SE, Plaintiff Vashti Sherrod noticed two United States Capitol Police patrol cars in her rear view mirror. Plaintiff Vashti Sherrod pulled her car to the curb and stopped.  Several police officers left the patrol cars, came up along the sides of her vehicle from behind her

car, and at least two officers pointed shotguns at Plaintiffs who sat terrified in their car.

35.    The lead Capitol Police officer told Plaintiff Vashti Sherrod that the Capitol Police had received a report that the car Plaintiffs were driving was a stolen vehicle. Plaintiff Vashti Sherrod assured the police officer that she and her husband owned the car and that it was not stolen.  The lead Capitol Police officer told Plaintiffs that he was not going to arrest any "senior citizens" and instructed them to wait inside their car.

36.    A few minutes later, MPD Detective Defendant McHugh arrived at the scene of the traffic stop, immediately ordered both Plaintiffs out of their car, and laughingly stated: "Remember me?  I am going for your gun and seize your vehicle." Defendant McHugh then searched Plaintiffs' car and found neither a gun nor any other contraband.  By now, Plaintiffs were visibly upset by these events and by McHugh's outrageous conduct; the lead Capitol Police officer consoled Plaintiff Eugene Sherrod, who was sobbing.  The stop and encounter was witnessed by several employees of the Library of Congress who were outside on their lunch break.

37.    Both Plaintiffs were detained at the scene of the traffic stop by Defendant McHugh and were not free to leave unless and until he permitted them to

do so, which constituted an arrest under the law of the District of Columbia.[1]

Plaintiffs were detained by Defendant McHugh for approximately ninety minutes and

then released.

38.    On July 7, 2015, at approximately 9:00 p.m., Plaintiffs were at home and

had retired to their bedroom for the evening when they were awakened by the sound

of pounding on their front door and flashing lights coming through the front windows

of their home in suburban Prince George's County, Maryland. Prince George's

County police officers, led by MPD Detective Defendant McHugh, either

purposefully or negligently failed to announce their presence and give Plaintiffs a

chance to open the door before entering.[2]

39.    Plaintiffs cowered inside their home, suspecting a home invasion and

fearing for their safety.  Then, the front door to their home was kicked in and Prince

George's County police officers, led by MPD Detective Defendant McHugh, barged

through the front door and into Plaintiffs' home.  One of the officers ordered Plaintiff

---

[1]  *See S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co.*, 396 A.2d 195, 198 (D.C. 1978) ("With regard to the allegation of false arrest, this jurisdiction's reading of the phrase seems clear.  The injury occurs at the moment when the injured party can no longer move freely…") (citing *Marshall v. District of Columbia*, 391 A.2d 1374 (D.C 1978)).

[2]  *See Wilson v. Arkansas,* 514 U.S. 927 (1995) (holding that officers must knock, announce their presence, and give the owner a chance to open the door before entering and may only enter without permission, with or without force, if they have been refused entry or waited a sufficient amount of time without receiving a response).

Vashti Sherrod to place her hands on her head, while another officer handcuffed

Plaintiff Eugene Sherrod. Both Plaintiffs were in their pajamas.  Plaintiffs were

terrified, especially Plaintiff Eugene Sherrod, who was unable to see who was

forcibly breaking into his home due to his disability.

40.    Defendant McHugh demanded that Plaintiffs produce their guns and

ammunition. Plaintiffs explained that they did not own a gun or have ammunition for

one.  Defendant McHugh responded by stating the "search is on." Throughout the

search, both Plaintiffs were detained by Defendant McHugh and were not free to

leave unless and until he permitted them to do so, which constitutes an arrest under

Maryland law.[3]

41.    Defendant McHugh personally and solely conducted the search of

Plaintiffs' home. During the search, McHugh upended Plaintiffs' furniture, shelves,

books, and personal effects and found nothing.  Defendant McHugh negligently

caused damage to Plaintiffs' real and personal property that was unnecessary to the

execution of the search warrant.[4]  As he was leaving Plaintiffs' home, Defendant

---

[3]  In Maryland, "[a]n arrest is defined as 'the taking, seizing or detaining of the
person of another, *inter alia,* by any act that indicates an intention to take him into
custody and that subjects him to the actual control and will of the person making the
arrest.'" *Wiegmann v. State*, 702 A.2d 928, 935, 118 Md.App. 317, 330-31 (1997)
(quoting *Morton v. State,* 284 Md. 526, 530, 397 A.2d 1385 (1979)).

[4]  In *Brutsche v. City of Kent,* 193 P.3d 110, 115 (Wash. 2015), the court held that
"[u]nder ... the *Restatement (Second) of Torts* (1965), a city may be liable in trespass
for unnecessary damage to property caused by its law enforcement officers executing

McHugh gave Plaintiff Vashti Sherrod a copy of the search warrant he had obtained. The Prince George's County police officers released the Plaintiffs, and they spent the evening cleaning up their ransacked home, still in shock from the traumatic experience.

42.    Upon further deliberation, on July 10, 2015, despite not finding a gun in Plaintiffs' car or home, Defendant McHugh: (1) swore out a false complaint against Plaintiff Vashti Sherrod, in which he claimed that "[o]n or about May 14, 2015; within the District of Columbia, Vashti Valma Sherrod assaulted Diane Schulz with a dangerous weapon, that is, a gun. (Assault with a Dangerous Weapon, in violation of 22 D.C. Code, Section § 402 (2001 ed.))" and (2) swore out a false unverified affidavit in support of an application for an arrest warrant for Plaintiff Vashti Sherrod, which Defendant McHugh presented to D.C. Superior Court Judge John Bagley.

43.    In the affidavit, Defendant McHugh asserted facts which he knew, or should have known, were unverified and materially false, including, but not limited to, the materially false allegations made by Defendant Schulz against Plaintiff Vashti Sherrod on May 14, 2015, set forth in Paragraph 23, *supra*. Defendant McHugh also failed to disclose in the affidavit that the video evidence did not corroborate the

---

a search warrant, on the theory that unreasonable damage to the property exceeds the privilege to be present on the property and search."

allegations that Defendant Schulz had asserted against Plaintiff Vashti Sherrod.

44.    Based on Defendant McHugh's false affidavit, on July 10, 2015, Judge Bagley issued a warrant for the arrest of Plaintiff Vashti Sherrod.

45.    On or about July 17, 2015, Plaintiff Vashti Sherrod retained attorney Brian McDaniel to represent her.  Attorney McDaniel then contacted Defendant Detective McHugh and ascertained that McHugh had obtained a warrant for her arrest.

46.    At or about 5:00 a.m. on July 20, 2015, Plaintiff Vashti Sherrod, accompanied by attorney McDaniel, turned herself in at the Metropolitan Police Department First District. There, Plaintiff Vashti Sherrod was handcuffed, fingerprinted, photographed, and jailed -- all pursuant to the fraudulent arrest warrant sought and obtained by Defendant McHugh.

47.    On July 20, 2015, Plaintiff Vashti Sherrod was transferred to the Central Cell Block of the Metropolitan Police Department, located at 300 Indiana Avenue, NW, where she awaited her initial appearance in D.C. Superior Court.

48.    On July 21, 2015, Plaintiff Vashti Sherrod was presented to Magistrate Judge Raymond in shackles and formally charged with Assault with a Dangerous Weapon, a felony.  Magistrate Judge Raymond released Plaintiff Vashti Sherrod on her own recognizance and ordered her to return for a preliminary hearing on August 12, 2015.

49.     On August 12, 2015, Plaintiff Vashti Sherrod attended the preliminary

hearing before Magistrate Judge Sullivan.  During the hearing, Defendant McHugh

testified:

Q. [Defense Counsel]: [Vashti Sherrod] was stopped by the Capitol Police. Was -- was she stopped by the Capitol Police at your request?

A. [McHugh]: I had entered the tag number of her vehicle into Crime Database NCIC with information **that the vehicle was involved in a crime** and that the vehicle should be stopped. The vehicle passed by a license plate reader on Capitol territory. One of their units subsequently stopped the vehicle and called me.

Aug. 12, 2105 Tr. 18:20-18:25 (emphasis supplied).

50.     Defendant McHugh's testimony was false.  First, Plaintiffs' vehicle had

not been "involved in a crime."  Second, McHugh had entered the tag number of

Plaintiffs' vehicle into the NCIC system as belonging to a felony vehicle, which was

also untrue.

51.     At the conclusion of the preliminary hearing, without viewing the

videotape of the encounter, the court bound the case over to the Grand Jury for its

consideration.

52.     Following the preliminary hearing, the United States Attorney's Office,

the local prosecutor for felony crimes in the District of Columbia, scheduled

Defendant Schulz to appear before the Superior Court Grand Jury to testify against

Plaintiff Vashti Sherrod.

53.     In her motion to extend time to file an answer, Defendant Schulz told

15

this Court that: "[t]he U.S. Attorney, Lisa Walters, was not forthcoming during the period of preparation for the Grand Jury about what the tape did or did not have on it" and that she "was not allowed to see the tape" before testifying.[5]

54.     Before Defendant Schulz testified before the grand jury, Defendant McHugh falsely told her that "the tape corroborated [her] statement" which led Schulz to go "ahead with the testimony" against Vashti Sherrod. Schulz also admitted that she "would never have done so" had she known that the tape, in fact, did not "backup" her story.

55.     At some point after Schulz testified, "McHugh [told her that] Mrs. Sherrod had not been indicted by the Grand Jury."[6]  On January 7, 2016, the U.S. Attorney dismissed the felony charge pending against Plaintiff Vashti Sherrod and abandoned and terminated the prosecution of her.  That same day, the Criminal Division of the D.C. Superior Court advised Plaintiff Vashti Sherrod to make an application under the Criminal Record Sealing Act (D.C. Code § 16-801, *et seq.*), which provides for the "sealing of criminal records on grounds of actual innocence." D.C. Code § 16-802.

---

[5]  *See* Docket Entry 12, Request for Extension of Response to Complaint, filed by Defendant Schulz *pro se* on June 6, 2016.

[6]  *Id*.

## COUNT ONE
### (Defendant McHugh's Violation of Plaintiff Vashti Sherrod's Fourth Amendment Rights Under 42 U.S.C. § 1983 – Searches, Seizures and Arrests Made Without Probable Cause)

56.    Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

57.    At all relevant times, Plaintiff Vashti Sherrod had a constitutional right under the Fourth Amendment of the United States Constitution to be secure from state actions that result in unlawful searches, seizures, and arrests made without probable cause.

58.    At all relevant times, Defendant McHugh was a state actor acting under the color of law, custom, or usage of the District of Columbia and on behalf of and in the interests of his employer, Defendant District of Columbia.

59.    Defendant McHugh and other police officers acting on his behalf and/or direction pursued, searched, seized, and arrested Plaintiff Vashti Sherrod, all without probable cause to believe that she had committed or was about to commit a crime.

60.    Defendant McHugh did not have a good faith or reasonable belief that probable cause existed to seize or arrest Plaintiff Vashti Sherrod or to search Plaintiff Vashti Sherrod's person, car, or home.

61.    As a direct and proximate result of Defendant McHugh's wrongful conduct, Plaintiff Vashti Sherrod suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

## COUNT TWO
### (Defendant McHugh's Violation of Plaintiff Vashti Sherrod's
### Fourth Amendment Rights Under 42 U.S.C. § 1983 – Malicious Prosecution)

62.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

63.     At all relevant times, Plaintiff Vashti Sherrod had a constitutional right under the Fourth Amendment of the United States Constitution to be secure from state actions that result in criminal prosecutions initiated and/or advanced without probable cause.

64.     At all relevant times, Defendant McHugh was a state actor acting under the color of law, custom, or usage of the District of Columbia and on behalf of and in the interests of his employer, Defendant District of Columbia.

65.     Defendant McHugh initiated and advanced criminal proceedings against Vashti Sherrod without probable cause to believe that she had committed a crime.

66.     Defendant McHugh's actions caused Plaintiff Vashti Sherrod to be unreasonably seized, arrested, and prosecuted without probable cause, in violation of the Fourth Amendment, and he is therefore liable for the malicious prosecution of her.

67.     As a direct and proximate result of Defendant McHugh's wrongful conduct, Plaintiff Vashti Sherrod suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

**COUNT THREE**
**(Defendant McHugh's Violation of Plaintiff Eugene Sherrod's**
**Fourth Amendment Rights Under 42 U.S.C. § 1983 – Searches,**
**Seizures and Arrests Made Without Probable Cause)**

68.    Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

69.    At all relevant times, Plaintiff Eugene Sherrod had a constitutional right under the Fourth Amendment of the United States Constitution to be secure from state actions that result in unlawful searches, seizures, and arrests made without probable cause.

70.    At all relevant times, Defendant McHugh was a state actor acting under the color of law, custom, or usage of the District of Columbia and on behalf of and in the interests of his employer, Defendant District of Columbia.

71.    Defendant McHugh and other police officers acting on his behalf and/or direction pursued, searched, seized, and arrested Plaintiff Eugene Sherrod, all without probable cause to believe that he had committed or was about to commit a crime.

72.    Defendant McHugh did not have a good faith or reasonable belief that probable cause existed to seize Plaintiff Eugene Sherrod or to search his person, car, or home.

73.    As a direct and proximate result of Defendant McHugh's wrongful conduct, Plaintiff Eugene Sherrod suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

## COUNT FOUR
### (Defendant McHugh's False Arrest And
### False Imprisonment of Plaintiff Vashti Sherrod)

74.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

75.     Defendant McHugh had no probable cause or legal justification to seize, search, arrest, or imprison Plaintiff Vashti Sherrod.

76.     Defendant McHugh's actions towards Plaintiff Vashti Sherrod constitute a false arrest and false imprisonment in violation of the common law of the District of Columbia.

77.     At the time Defendant McHugh committed this unlawful conduct towards Plaintiff Vashti Sherrod, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

78.     Defendant McHugh's outrageous, unconscionable, and unlawful arrest and detention of Vashti Sherrod, an elderly woman, caused her "mental suffering, including fright, shame and mortification from the indignity and disgrace, consequent upon illegal [arrest and] detention"[7] and to incur legal expenses.

---

[7] *Neisner Bros. Inc. v. Ramos*, 326 A.2d 239, 240 (D.C. 1974) (internal quotation marks and citation omitted).

## COUNT FIVE
### (Defendant McHugh's False Arrest
### of Plaintiff Eugene Sherrod)

79.    Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

80.    Defendant McHugh had no probable cause or legal justification to seize or arrest Plaintiff Eugene Sherrod.

81.    Defendant McHugh's actions towards Plaintiff Eugene Sherrod constitute a false arrest in violation of the common law of the District of Columbia.

82.    At the time Defendant McHugh committed this unlawful conduct towards Plaintiff Eugene Sherrod, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

83.    Defendant McHugh's outrageous, unconscionable, and unlawful arrest and detention of Eugene Sherrod, an elderly man, caused him "mental suffering, including fright, shame and mortification from the indignity and disgrace, consequent upon illegal [arrest and] detention"[8] and to incur other damages.

---

[8]  *Neisner Bros.*, 326 A.2d at 240.

## COUNT SIX
### (Defendants Schulz and McHugh's
### Malicious Prosecution of Plaintiff Vashti Sherrod)

84.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

85.     Defendants Schulz and McHugh initiated, procured, and advanced a criminal proceeding against Plaintiff Vashti Sherrod in the absence of probable cause for the proceeding and with malicious intent on the part of these Defendants.

86.     The criminal proceeding was terminated in favor of Plaintiff Vashti Sherrod on grounds that "tend[ed] to indicate the innocence of the accused:"[9]  The Grand Jury refused to indict Plaintiff Vashti Sherrod, and the U.S. Attorney thereafter dismissed the charge pending against Plaintiff Vashti Sherrod and terminated and abandoned any further prosecution of her.

87.     Defendants Schulz and McHugh's actions towards Plaintiff Vashti Sherrod constitute a malicious prosecution in violation of the common law of the District of Columbia.

88.     At the time Defendant McHugh committed this unlawful conduct towards Plaintiff Vashti Sherrod, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department

---

[9]  *Brown v. Carr,* 503 A.2d 1241, 1245 (D.C. 1986); *Blakeney v. O'Donnell*, 117 F. Supp.3d 6, 19-20 (D.D.C. 2015) (Mehta, J.).

and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

89.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Vashti Sherrod suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

**COUNT SEVEN**
**(Defendant McHugh's Assault on**
**Plaintiffs Vashti Sherrod and Eugene Sherrod)**

90.    Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

91.    On June 29, 2015, Defendant McHugh and/or police officers acting on his behalf and/or direction, without provocation or a reasonable or valid basis to do so, engaged in harmful and offensive conduct towards both Plaintiffs Vashti Sherrod and Eugene Sherrod when then they pointed shotguns at Plaintiffs, who sat terrified in their car.

92.    On July 7, 2015, Defendant McHugh and police officers acting on his behalf and/or direction, without provocation or a reasonable or valid basis to do so, engaged in harmful and offensive conduct towards both Plaintiffs Vashti Sherrod and Eugene Sherrod when they kicked down the door to Plaintiffs' home in the middle of the night, without first announcing themselves and allowing Plaintiffs the opportunity to answer, in order to execute a search warrant that Defendant McHugh knew, or

should have known, was invalid.

93.    Defendant McHugh's actions towards Plaintiffs constitute an assault in violation of the common law of the District of Columbia and Maryland.

94.    At the time Defendant McHugh committed this unlawful conduct towards Plaintiffs, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

95.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

## COUNT EIGHT
### (Defendant McHugh's Negligence
### Toward Plaintiffs Vashti Sherrod and Eugene Sherrod)

96.    Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

97.    The MPD maintains written policies and procedures for the obtaining and service of search and arrest warrants to which Defendant McHugh and all other Department employees had and have a duty to abide.[10]

98.    The MPD's written internal policies and procedures provide that search

---

[10]    *See Morgan v. District of Columbia*, 449 A.2d 1102, 1109 (D.C. 1982).

and arrest warrants shall only be issued and served based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed.

99.    The MPD's written internal policies and procedures also require that each and every member of the Department who applies for a warrant must corroborate the facts stated in an affidavit submitted in support of the application and determine the accuracy, validity, and truthfulness of all information presented.

100.   Defendant McHugh, acting as an employee of Defendant District of Columbia in his capacity as a police officer for the District of Columbia, owed a duty to Plaintiffs Vashti Sherrod and Eugene Sherrod to perform his police duties in accordance with the MPD's internal written policies and procedures and without violating their constitutional rights under the Fourth Amendment of the United States Constitution to be secure from state actions that result in unlawful searches, seizures, and/or arrests made without probable cause and/or based on false affidavits.

101.   Defendant McHugh breached his duties to Plaintiffs when he subjected them to unlawful searches, seizures, and arrests made without probable cause and/or based on false affidavits.

102.    Defendant McHugh also had a duty to execute the warrant to search Plaintiffs' home in a manner that would cause no unnecessary damage to Plaintiffs'

property.[11]

103.   Defendant McHugh breached his duty to Plaintiffs when he caused unnecessary damage to Plaintiffs' real and personal property while executing the warrant issued to search Plaintiffs' home.

104.   At the time Defendant McHugh committed this negligent and unlawful conduct towards Plaintiffs, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

105.   As a direct and proximate result of Defendants' negligent and wrongful conduct, Plaintiffs suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

---

[11]   *See Brutsche,* 193 P.3d at 115 ("In executing a search warrant, officers of the law should do no unnecessary damage to the property to be examined, and should so conduct the search as to do the least damage to the property consistent with a thorough investigation."); *See also Wright v. United States,* 963 F. Supp. 7, 16-17 (D.D.C. 1997) (holding that "there was sufficient evidence to prove that the U.S. Park Police acted negligently in … (3) damaging the [Plaintiffs'] personal property during the course of search[.]").

## COUNT NINE
### (Defendant McHugh's Negligent Infliction of Emotional Distress on Plaintiffs Vashti Sherrod and Eugene Sherrod)

106.   Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

107.   Defendant McHugh negligently subjected Plaintiffs to an unlawful search, seizure, and arrest made without probable cause and based on a false statement, in violation of the duty that he owed to Plaintiffs under MPD's internal written policies and procedures, when he filed a police report alleging that Plaintiffs' vehicle was a "felony vehicle" without probable cause to believe his report was accurate and/or truthful.

108.   Defendant McHugh's negligent acts or omissions caused police officers to seize Plaintiffs' vehicle and surround Plaintiffs with guns drawn, causing Plaintiffs extreme fear for their physical safety.[12]

109.   Defendant McHugh negligently subjected Plaintiffs to an unlawful search, seizure, and arrest made without probable cause and/or based on a false

---

[12] *See Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 796 (D.C. 2011) (the "zone of physical danger rule … permits recovery for mental distress if the defendant's actions caused the plaintiff to be in danger of physical injury and if, as a result, the plaintiff feared for his own safety" (internal quotations omitted)); *Williams v. Baker*, 572 A.2d 1062, 1073 (D.C. 1990) (holding that "if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress … regardless of whether plaintiff experienced a physical impact.")

affidavit, in violation of the duty that he owed to Plaintiffs under MPD's internal written policies and procedures, when he sought, obtained, and executed a search warrant for Plaintiffs' home.

110.    Defendant McHugh and other police officers under his direction and/or control negligently executed the warrant issued to search Plaintiffs' home by failing to announce their presence and give Plaintiffs the opportunity to open the door before forcibly entering their home.

111.    The negligent acts or omission of Defendant McHugh and other officers under his direction and/or control when executing the search warrant for Plaintiffs' home caused Plaintiffs extreme fear for their physical safety in their own home, as they believed they were experiencing a home invasion when the police team led by Defendant McHugh swarmed their home and broke down their door in the middle of the night without first announcing themselves as police officers.

112.    Defendant McHugh negligently subjected Plaintiff Vashti Sherrod to an unlawful search, seizure, and arrest made without probable cause and/or based on a false affidavit, in violation of the duty that he owed to her under MPD's internal written policies and procedures, when he swore out the false complaint and affidavit that led to the issuance of a warrant for Plaintiff Vashti Sherrod's arrest and the execution of the arrest warrant.

113.   The negligent acts or omissions of Defendant McHugh caused Plaintiff

Vashti Sherrod extreme fear for her physical safety when she was placed into custody

and confined to jail, and further caused Plaintiff Vashti Sherrod to experience

extreme humiliation when she was forced to appear in shackles before the D.C.

Superior Court, facing felony charges.

114.   The negligent acts and omissions of Defendant McHugh caused serious

emotional distress to Plaintiffs that a reasonable person in Defendant's position

would have foreseen under the circumstances.

115.   The conduct of Defendant McHugh towards Plaintiffs constitutes the

negligent infliction of emotional distress in violation of the common law of the

District of Columbia.

116.   At the time Defendant McHugh committed this negligent and unlawful

conduct towards Plaintiffs, he was acting in the scope of his employment as a police

officer employed by the District of Columbia Metropolitan Police Department and

was acting on behalf of and in the interests of his employer, Defendant District of

Columbia.

117.   As a direct and proximate result of Defendants' negligent and wrongful

conduct, Plaintiffs suffered significant enduring emotional and physical pain and

suffering, anxiety, fear and shame, and other damages. Specifically, Plaintiff Vashti

Sherrod has experienced severe insomnia, persistent recurring nightmares, and acute

anxiety, which affected her to such a degree that she was forced to seek and obtain

medical treatment, which is presently ongoing.  Plaintiff Eugene Sherrod has

experienced similar symptoms of emotional trauma as a result of Defendants'

wrongful conduct.

## COUNT TEN
### (Defendants McHugh and Schulz's Intentional Infliction
### of Emotional Distress on Plaintiffs Vashti Sherrod and Eugene Sherrod)

118.    Plaintiffs incorporate by reference each preceding paragraph as if fully

set forth herein.

119.    The conduct of each of these defendants, complained of herein, was

extreme and outrageous and intentionally and/or recklessly caused Plaintiffs Vashti

Sherrod and Eugene Sherrod severe emotional distress.

120.    Moreover, Defendants Schulz and McHugh knew, or should have

known, that Plaintiffs were particularly susceptible to emotional distress due to their

advanced age and Plaintiff Eugene Sherrod's disability.[13]

121.    The conduct of Defendants Schulz and McHugh towards Plaintiffs

---

[13]  *See Hedgepeth*, 22 A.3d at 816 ("We have held that in a suit for intentional
infliction of emotional distress, 'acts which are not generally considered outrageous
may become so when the actor knows that the other person is peculiarly susceptible
to emotional distress.'" (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1313 (D.C.
1994)); *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) ("[B]ehavior that might
otherwise be considered merely rude, abrasive, or inconsiderate, may be deemed
outrageous if the defendant knows that the plaintiff is particularly susceptible to
emotional distress." (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21
(1992)).

constitutes the intentional infliction of emotional distress in violation of the common law of the District of Columbia.

122.  At the time Defendant McHugh committed this unlawful conduct towards Plaintiffs, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

123.  As a direct and proximate result of Defendants' wrongful conduct, especially Defendants' continuous and relentless use of the legal system to harass and persecute Plaintiffs in bad faith and without probable cause, Plaintiffs Vashti Sherrod and Eugene Sherrod suffered significant and enduring emotional physical pain and suffering, anxiety, fear and shame, and other damages. Specifically, Plaintiff Vashti Sherrod has experienced severe insomnia, persistent recurring nightmares, and acute anxiety which affected her to such a degree that she was forced to seek and obtain medical treatment, which is presently ongoing.  Plaintiff Eugene Sherrod has experienced similar symptoms of emotional trauma as a result of Defendants' wrongful conduct.

## COUNT ELEVEN
### (Defendants McHugh and Schulz's
### Liability for Punitive Damages)

124.   Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

125.   The individual tortious acts and omissions of each Defendant complained of herein were accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, and willful disregard for Plaintiffs' rights.

126.   Plaintiffs are entitled to an award of punitive damages against these Defendants under the common law of the District of Columbia in order to punish Defendants' outrageous behavior and to deter them from engaging in such misconduct in the future.

## COUNT TWELVE
### (Defendant District of Columbia's False Arrest
### And False Imprisonment of Plaintiff Vashti Sherrod)

127.   Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein

128.   On January 15, 2016, pursuant to D.C. Code § 12-309, Plaintiff Vashti Sherrod, through counsel, gave the Mayor of the District of Columbia timely written notice of the claims asserted in this count and those that follow.

129.   The District officials assigned by the Mayor to investigate Plaintiff's claims failed to interview any party to this action or any witnesses and failed to view

the video recording of central importance to the matters at issue in the claims.  On

May 10, 2016, the District announced that it had "determined the District is not liable

because the actions of the MPD officer were ***privileged***" and denied the claims

(emphasis supplied).

130.   This count concerns injuries sustained by Plaintiff Vashti Sherrod on

and/or after July 15, 2015.

131.   Defendant McHugh lacked probable cause or legal justification to have

Plaintiff Vashti Sherrod arrested and jailed on July 20, 2015.

132.   Defendant McHugh's outrageous, unconscionable, and unlawful arrest

and detention of Vashti Sherrod, an elderly woman, caused her "mental suffering,

including fright, shame and mortification from the indignity and disgrace, consequent

upon illegal [arrest and] detention"[14] and to incur legal expenses.

133.   Defendant McHugh's actions towards Plaintiff Vashti Sherrod constitute

a false arrest and false imprisonment in violation of the common law of the District of

Columbia.

134.   At the time Defendant McHugh committed this unlawful conduct

towards Plaintiff Vashti Sherrod, he was acting in the scope of his employment as a

police officer employed by the District of Columbia Metropolitan Police Department

and was acting on behalf of and in the interests of his employer, Defendant District of

---

[14]  *Neisner Bros.*, 326 A.2d at 240.

Columbia.

135.   Defendant District of Columbia is vicariously liable for the actions taken by Defendant McHugh, including falsely arresting and imprisoning Plaintiff Vashti Sherrod, under the doctrine of respondeat superior.

136.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Vashti Sherrod suffered significant emotional and physical pain, physical pain, suffering, fear and shame, and other damages.

### COUNT THIRTEEN
### (Defendant District of Columbia's
### Malicious Prosecution of Plaintiff Vashti Sherrod)

137.   Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

138.   This count concerns injuries sustained by Plaintiff Vashti Sherrod on and/or after July 15, 2015.

139.   Defendant McHugh initiated, procured, and advanced a criminal proceeding against Plaintiff Vashti Sherrod in the absence of probable cause for the proceeding and with malicious intent on the part of this Defendant.

140.   The criminal proceeding was terminated in favor of Plaintiff Vashti Sherrod on grounds that "tend[ed] to indicate the innocence of the accused:"[15]  The Grand Jury refused to indict Vashti Sherrod, and the U.S. Attorney thereafter

---

[15] *Brown,* 503 A.2d at 1245 (D.C. 1986); *Blakeney*, 117 F. Supp.3d at 19-20.

dismissed the charge pending against Plaintiff and terminated and abandoned any further prosecution of her.

141.    Defendant McHugh's actions towards Plaintiff Vashti Sherrod constitute a malicious prosecution in violation of the common law of the District of Columbia.

142.    At the time Defendant McHugh committed this unlawful conduct against Plaintiff Vashti Sherrod, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

143.    Defendant District of Columbia is vicariously liable for the actions taken by Defendant McHugh in maliciously prosecuting Plaintiff Vashti Sherrod under the doctrine of respondeat superior.

144.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Vashti Sherrod suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

**COUNT FOURTEEN**
**(Defendant District of Columbia's**
**Negligence Toward Plaintiff Vashti Sherrod)**

145.    Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

146.    This count concerns injuries sustained by Plaintiff Vashti Sherrod on

and/or after July 15, 2015.

147.   The MPD maintains written internal policies and procedures for obtaining and service of arrest warrants to which Defendant McHugh and all other Department employees had and have a duty to abide.[16]

148.   The MPD's written internal policies and procedures provide that arrest warrants shall only be issued and served based on probable cause that would lead a reasonable, prudent, and cautious police officer to believe a crime has been committed.

149.   The MPD's written internal policies and procedures also require that each and every member of the Department who applies for an arrest warrant must corroborate the facts stated in the affidavit submitted in support of the application and determine the accuracy, validity, and truthfulness of the information presented.

150.   Defendant McHugh, acting as an employee for Defendant District of Columbia in his capacity as a police officer for the District of Columbia, owed a duty to Plaintiff Vashti Sherrod to perform his police duties in accordance with the MPD's written internal policies and procedures and without violating her constitutional rights under the Fourth Amendment of the United States Constitution to be secure from state actions that result in the unlawful arrests made without probable cause or based on false affidavits.

---

[16] *See Morgan*, 449 A.2d at 1109.

151.    Defendant McHugh breached his duties to Plaintiff Vashti Sherrod by subjecting her to an unlawful arrest on July 20, 2015 without probable cause based on his false affidavit.

152.    Defendant District of Columbia is vicariously liable for the negligent acts of Defendant McHugh taken against Plaintiff complained of herein under the doctrine of respondeat superior.

153.    As a direct and proximate result of Defendants' negligent and wrongful conduct, Plaintiff Vashti Sherrod suffered significant emotional and physical pain, suffering, fear and shame, and other damages.

## COUNT FIFTEEN
### (Defendant District of Columbia's Negligent
### Infliction of Emotional Distress on Plaintiff Vashti Sherrod)

154.    Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

155.    This count concerns injuries sustained by Plaintiff Vashti Sherrod on and/or after July 15, 2015.

156.    Defendant McHugh negligently subjected Plaintiff Vashti Sherrod to an unlawful search, seizure, and arrest made without probable cause and based on a false affidavit, in violation of his duty owed to her under MPD's internal written policies and procedures, when he swore out the false complaint and affidavit that led to the

issuance of a warrant for Plaintiff Vashti Sherrod's arrest and the execution of the arrest warrant.

157.    The negligent acts or omissions of Defendant McHugh caused Plaintiff Vashti Sherrod to experience extreme fear for her physical safety when she was placed into custody and confined to jail, and further caused Plaintiff Vashti Sherrod to experience extreme humiliation when she was forced to appear in shackles before the D.C. Superior Court, facing felony charges.

158.    The negligent acts and omissions of Defendant McHugh caused serious emotional distress to Plaintiff Vashti Sherrod that a reasonable person in Defendant's position would have foreseen under the circumstances.

159.    The conduct of Defendant McHugh towards Plaintiff Vashti Sherrod constitutes the negligent infliction of emotional distress in violation of the common law of the District of Columbia.

160.    At the time Defendant McHugh committed this negligent and unlawful conduct towards Plaintiff Vashti Sherrod, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

161.    Defendant District of Columbia is vicariously liable for the conduct taken by Defendant McHugh against Plaintiff Vashti Sherrod complained of herein

under the doctrine of respondeat superior.

162.   As a direct and proximate result of Defendants' negligent and wrongful

conduct, Plaintiff Vashti Sherrod suffered significant and enduring emotional and

physical pain and suffering, anxiety, fear and shame, and other damages. Specifically,

Plaintiff Vashti Sherrod has experienced severe insomnia, persistent recurring

nightmares, and acute anxiety which affected her to such a degree that she was forced

to seek and obtain medical treatment, which is presently ongoing.

## COUNT SIXTEEN
### (Defendant District of Columbia's Intentional
### Infliction of Emotional Distress on Plaintiff Vashti Sherrod)

163.   Plaintiffs incorporate by reference each preceding paragraph as if fully

set forth herein.

164.   This count concerns injuries sustained by Plaintiff Vashti Sherrod on

and/or after July 15, 2015.

165.   Defendant McHugh's conduct complained of herein was extreme and

outrageous and intentionally and/or recklessly caused Plaintiff Vashti Sherrod severe

emotional distress.

166.   Moreover, Defendant McHugh knew, or should have known, that

Plaintiff Vashti Sherrod was particularly susceptible to emotional distress due to her

advanced age.[17]

---

[17]  *See Fox,* 600 F.3d at 842.

167.   The conduct of Defendant McHugh towards Plaintiffs constitutes the intentional infliction of emotional distress in violation of the common law of the District of Columbia.

168.   At the time Defendant McHugh committed this unlawful conduct towards Plaintiffs, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

169.   Defendant District of Columbia is vicariously liable for the conduct taken by Defendant McHugh against Plaintiff Vashti Sherrod complained of herein under the doctrine of respondeat superior.

170.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Vashti Sherrod suffered significant and enduring emotional and physical pain and suffering, anxiety, fear and shame, and other damages. Specifically, Plaintiff Vashti Sherrod has experienced severe insomnia, persistent recurring nightmares, and acute anxiety which affected her to such a degree that she was forced to seek and obtain medical treatment, which is presently ongoing.

## COUNT SEVENTEEN
### (Defendant Schulz's Negligence
### Toward Plaintiffs Vashti Sherrod and Eugene Sherrod)

171.   Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

172.   Defendant Schulz owed a duty to Plaintiffs to act reasonably toward them and all other members of the community and prevent them from being unlawfully detained, arrested and prosecuted,

173.   Defendant Schulz breached her duty to Plaintiffs by negligently relaying the details of the May 14, 2015 traffic incident to Defendant McHugh.

174.   Defendant Schulz breached her duty to Plaintiffs at all times by negligently failing to withdraw her complaint against Plaintiff Vashti Sherrod when she knew or should have known that her account of the May 14, 2015 traffic incident to Defendant McHugh was more likely than not mistaken and or false.

175.   As a direct and proximate result of Defendant Schulz's negligence, Plaintiffs were subjected to unlawful searches, seizures, arrests and/or detentions made without probable cause and thereby suffered significant emotional and physical pain, suffering, fear and shame, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff prays that this Court:

(a)  enter judgment against Defendants;

(b)  enter a declaratory judgment declaring that the actions of Defendants

McHugh and the District of Columbia violated Plaintiffs' constitutional rights under

the Fourth Amendment of the United States Constitution;

(c)  award compensatory damages against all Defendants jointly and severally

in the amount of $10 million;

(d)  award punitive damages against Defendants Schulz and McHugh jointly

and severally in the amount of $10 million;

(e)  award Plaintiffs' costs, interest, and reasonable attorneys' fees for this

action pursuant to 42 U.S.C. §1988; and

(f)  order such other and further relief as the Court deems just and proper under

the circumstances.

*/s/ Kenneth D. Bynum*
Kenneth D. Bynum
D.C. Bar No. 424515
Bynum & Jenkins
1010 Cameron Street
Alexandria, VA 22314
T: (703) 549-7211
F: (703) 549-7701
E: kbynum@bynumandjenkinslaw.com

_/s/ Peter T. Enslein_
Peter T. Enslein
D.C. Bar No. 367467
Law Offices of Peter T. Enslein, P.C.
1738 Wisconsin Avenue, NW
Washington, DC 20007
T: (202) 329-9949
F: (202) 625-3490
E: peter@ensleinlaw.com

_Attorneys for Plaintiffs_

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all counts so triable.

_/s/ Kenneth D. Bynum_
Kenneth D. Bynum