# EXHIBIT 22



*CRIMINAL INVESTIGATIONS*

# Model Policy

| Effective Date | Number |
|---|---|
| February 2003 | |

| Subject | |
|---|---|
| **Criminal Investigations** | |
| Reference | Special Instructions |
| Distribution | Reevaluation Date | No. Pages<br>5 |

## I. PURPOSE

The purpose of this policy is to ensure the efficient and effective management of the criminal investigation function by providing administrative guidance that identifies the responsibilities and investigative processes within the patrol and investigative components of the department.

## II. POLICY

It is the policy of this agency to manage the function of criminal investigation in an effective and efficient manner by coordinating the efforts of patrol and other investigative organizational components as provided in this directive.

## III. DEFINITIONS

*Criminal Investigation:* The collection of facts and information intended to identify an offender and to organize facts and information in a way that presents evidence sufficient for criminal charges.

*Investigative Services:* Unit of the department staffed by personnel assigned to specific areas of investigation such as auto theft, narcotics, and vice.

*Preliminary Investigation:* The preliminary crime-scene investigation and recording of information. It is generally the responsibility of first responding uniformed patrol officers, although in some instances investigative personnel may be assigned to or included in this function.

*Primary Investigator:* The officer assigned primary responsibility and accountability for an investigation.

## IV. PROCEDURES

Most investigations begin with the preliminary investigation conducted by a patrol officer. Depending on the nature and severity of the crime and complexity of the crime scene, a follow-up investigation conducted by the investigative services may be initiated.

A. Preliminary Investigation

Activities during the preliminary investigation shall center on the protection of persons, collection of evidence, apprehension of criminals at or near the crime scene and solving the reported crime. During the preliminary investigation, officers shall perform the following duties in the order and to the degree deemed appropriate;

- Make the crime scene safe to the degree possible.
- Notify the police communications center concerning injured parties and any dangerous conditions present, and request appropriate medical assistance and additional equipment, services, or personnel as needed.
- Assist the injured pending arrival of EMS personnel. In serious cases, an officer shall be assigned to accompany the victim or the suspect to the hospital and remain with him or her to record information on the incident.
- Determine if a crime was committed by statute.
- Take written notes and conduct voice recordings whenever possible.
- Establish a crime scene perimeter, and secure the crime scene to the degree possible against alterations due to weather or other contamination. (Refer to Attached Preliminary Investigation Checklist)

B. Preliminary Investigation Case Management
   1. Patrol officers shall pursue preliminary investigations to the full extent of their available time and investigative training. In most minor property crimes, patrol personnel should assume responsibility of the crime scene and conduct any on-scene and follow-up investigation that may be deemed necessary.
   2. The preliminary investigation shall, whenever practicable, be completed by the end of the shift in which it occurs. The supervisor of the shift shall review, approve as appropriate, and forward the preliminary investigative report to investigative services as soon as practicable.
   3. In exceptional instances, when circumstances prevent the timely completion of the report, the supervisor shall ensure that a draft report of the incident is completed, thereby ensuring that investigative services is aware of the incident and has the necessary information to initiate a follow-up investigation if warranted.
C. Investigative Services Personnel at the Crime Scene
   1. Investigative services personnel shall be notified if there is a need for immediate investigation at the crime scene via a request from the patrol division's watch commander or by a patrol supervisor as circumstances dictate. Requests for investigative service assistance at the crime scene shall be based on the following primary factors:
      a. The seriousness or complexity of the crime
      b. Where a "hot" lead requires immediate attention
      c. The dangerousness of the crime scene
      d. Level of patrol officer expertise in crime scene processing and the availability of appropriate crime scene processing equipment for photography, evidence collection, and related tasks
      e. Where the crime may serve as a link to another crime
   2. Investigative services shall assume responsibility for oversight and completion of investigations of all major crime scenes as defined by the investigative services commander. The investigative officer in charge shall have complete authority to establish priorities and make decisions regarding witnesses and suspects, recording of statements and collection of physical evidence, making on-site arrests, applying for warrants, and all other activities germane to a comprehensive investigation of the incident.

   3. Circumstances permitting, the watch commander may assign patrol officers to assist investigative services personnel. In such instances, these officers are responsible to the on-scene investigative officer in charge.
D. IS Follow-Up Investigations
   The officer in charge (OIC) of investigative services shall review the preliminary investigation and make a determination of additional investigative activities that are required. These activities may include but are not limited to any or all of the following in the order deemed appropriate:
   1. Enter wanted persons, stolen vehicles, and serial numbered stolen property into NCIC.
   2. Conduct initial or follow-up interviews with witnesses and suspects.
   3. Make notifications and coordinate with other jurisdictions or governmental law enforcement agencies.
   4. Search for new witnesses.
   5. Complete background checks on witnesses, victims, and suspects as appropriate.
   6. Conducting surveillance, interrogation, or identification procedures.
   7. Present evidence and statements to the prosecutor's office to obtain arrest or search warrants.
   8. Prepare and execute search or arrest warrants.
   9. Attend and retrieve evidence at autopsies.
   10. Develop exhibits for presentation in court including latent/patent fingerprint charts, crime scene sketches, and photographs.
   11. Interrogate suspects.
   12. In major cases potentially involving multiple jurisdictions, activate lead tracking protocols (e.g., FBI's Rapid Start).
   13. Search for and recover stolen property.
   14. Submit items for forensic examination.
   15. Arrange for polygraph examinations.
   16. Seek additional information from other officers, informants, contacts in community, and other investigators and agencies.
   17. Identify recent prison releases into the community.
   18. Seek additional information from police agency records regarding suspects, witnesses, or past incidents at or near the location of the crime.
   19. Seek additional information from records including motor vehicle, driver's licenses, social security, occupational licenses, records from other law enforcement agencies, newspapers, employee records, and credit files.

2

Hayden Report 000002

20. Track the source of all firearms involved and enter ballistic information into national databases.
21. Contact confidential informants and coordinate with departmental and regional intelligence databases.
22. Notify victims and witnesses when their presence is required in court.

E. Investigative Services Case Management
1. The OIC of investigative services shall assign cases based on their seriousness and in accordance with priorities based on the presence of solvability factors, to include the following:
   a. Suspect in custody
   b. Suspect named or known
   c. Unique suspect identifiers
   d. Vehicle in custody
   e. Unique vehicle identifiers
   f. Writer or reviewer discretion
   g. General suspect description
   h. General vehicle description
   i. Unique MO or crime pattern
   j. Significant physical evidence
   k. Traceable stolen property
   l. Witnesses
2. Investigation of minor property crimes shall not be conducted or shall be discontinued when sufficient solvability factors are not available. In such cases, victims shall be informed of the departmental policy on this matter and its rationale and be provided with a copy of the crime report for insurance claims.
3. When a case is assigned, the frequency of follow-up reports shall be established. This determination shall be based on the severity of the crime and the overall caseload of the investigator assigned. Cases shall remain open as long as leads are not exhausted, resources are not needed on more serious cases, and one or more of the following avenues of investigation appear promising:
   a. Suspect information
   b. Physical evidence
   c. Vehicle description and license plate information;
   d. Identifiable stolen property
   e. Recognizable crime pattern involving several crimes
4. Each case file shall be assigned a number identical to the original complaint number. As follow-up reports are completed, the original shall be filed in the agency's records division. Copies of all follow-up reports from active cases shall be filed in investigative services and shall be accessible to all investigative services personnel unless otherwise instructed by the investigative services OIC.

5. The investigative OIC shall maintain a case status log, based on the following definitions:
   a. Cleared: An arrest has been made, and the arrestee(s) have been charged with the commission of the offense in question and turned over to the court for prosecution.
   b. Exceptional Clearance: The identity and address or exact location of the offender is known and sufficient evidence exists to make an arrest and charge the offender. However, a reason outside the agency's control does not allow the agency to arrest and charge the suspect. An example of an exceptional clearance is when the suspect is known but has died, extradition is denied, or the offender is being charged in another jurisdiction.
   c. Open: An ongoing investigation. If the investigation has exhausted all leads, yet the possibility remains that new facts may come to light given ongoing inquiry, the case shall remain open.
   d. Unfounded: The offense did not occur.
   e. Inactive: When all potentially fruitful leads have been exhausted an investigation may be classified as inactive. An investigation may be reactivated and assigned to an investigator's active caseload if sufficient new leads are developed.

6. Monthly activity or productivity reports shall be provided by investigators, and monthly summary reports of case status and unit productivity shall be developed by investigative services in accordance with specifications of the agency chief executive or other designated officer.
7. Both victims of crime and preliminary investigating officers shall be kept informed of the status of case investigations.
8. Investigative services shall maintain close coordination with the intelligence function of this agency and, as determined by the investigative OIC, with regional intelligence operations. Particular emphasis shall be placed on the identification of crime patterns suitable for making informed tactical decisions on manpower assignments.
9. Investigative services shall establish, as a priority, the arrest and prosecution of repeat offenders—as defined by the agency CEO or his or her designee—through postarrest screening

3

of suspects and coordination of prosecution efforts with the office of the district attorney. Proactive targeting of repeat and violent offenders—using such tactics as stakeouts, surveillance, and informants --shall also be emphasized and directed by the investigative OIC in cooperation with information provided by intelligence and related sources.

10. Investigative services shall adhere to the tenets of community policing and problem solving to which this department subscribes. As such, investigative services officers shall be responsible for the identification of crime trends and problems that may be addressed by measures not limited to arrest.

Every effort has been made by the IACP National Law Enforcement Policy Center staff and advisory board to ensure that this document incorporates the most current information and contemporary professional judgment on this issue. However, law enforcement administrators should be cautioned that no "model" policy can meet all the needs of any given law enforcement agency. Each law enforcement agency operates in a unique environment of federal court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered. In addition, the formulation of specific agency policies must take into account local political and community perspectives and customs, prerogatives and demands; often divergent law enforcement strategies and philosophies; and the impact of varied agency resource capabilities among other factors.

This project was supported by a grant awarded by the Bureau of Justice Assistance. The Bureau of Justice Assistance is a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics, the National Institute of Justice, the Office of Juvenile Justice and Delinquency Prevention, the Office for Victims of Crime, and the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. Points of view or opinions in this document are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice or the IACP.

IACP National Law Enforcement Policy Center Staff: Philip Lynn, Manager; Sara Dziejma, Project Specialist; and Vincent Talucci, Executive Director, International Association of Chiefs of Police.

© Copyright 2003. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.

Hayden Report 000004

## Preliminary Investigation Checklist

☐ Notify a supervisor if the immediate presence of a criminal investigator is deemed necessary.

☐ Arrest and *Mirandize* suspects and record any spontaneous utterances verbatim.

☐ If a suspect or suspects have fled the scene, provide communications with their names, addresses, or locations if known and their descriptions including clothing, vehicle(s) used, and whether they are considered armed.

☐ Create a log to document the time of arrival and departure of emergency and investigative personnel.

☐ Locate, separate, and identify witnesses for possible follow-up contact. Obtain name, alias, date of birth, home address, work address, home and work phone numbers, and cellular phone number if available. Conduct basic interviews as time and circumstances permit.

☐ As time permits and priorities allow, check with neighboring businesses and residents as well as friends and relatives of the victim who may be available and who are routine visitors to the location where the crime occurred.

☐ Notify an immediate supervisor when unusual circumstances are present such as a secondary crime scene or when other immediate investigative or related actions need to be taken.

☐ Complete a neighborhood canvass and record which neighbors are at home and may be so situated as to have information pertinent to the investigation.

☐ Complete all written reports as soon as possible and in serious cases by the end of shift. Initial and supplemental reports of the incident should include but not be limited to the following information:

- Date and time of arrival at the scene
- Relevant weather or situational conditions and observations upon arrival at the scene
- Circumstances of how the crime was discovered and reported
- Identity of other officers or emergency personnel at the scene
- Description of injuries sustained by victim(s) and others
- Physical evidence present at the scene and the officer(s) responsible for its collection and storage
- Names, addresses, telephone numbers of victims, witnesses, and suspects
- Spontaneous statements made by victims, witnesses, or suspects
- Results of interviews with complainants, victims, or witnesses to include the identity or description of suspects
- Diagrams, sketches, photographs, videotape or audio recordings taken, and the identity of the recording officer
- Details relating to search warrants
- Property damage
- Stolen property descriptions, serial numbers or other markings or identifiable characteristics as available
- Time the crime scene was released
- Recommendations for further investigation or action

5

Hayden Report 000005



*OBTAINING A SEARCH VARRANT*



# Model Policy

| *Effective Date* <br> **April 1995** | | *Number* |
|---|---|---|
| **Subject** <br> **Obtaining a Search Warrant** | | |
| **Reference** | | *Special Instructions* |
| **Distribution** | **Reevaluation Date** | **No. Pages** <br> 3 |

## I. PURPOSE

It is the purpose of this policy to provide guidelines for obtaining search warrants.

## II. POLICY

The search warrant is one of the more powerful and valuable tools in the law enforcement arsenal. While the process of applying for and obtaining a search warrant should be familiar to most officers, there are many technical and legal pitfalls that can invalidate a search warrant, lead to the suppression of evidence or dismissal of cases, and have liability implications for involved officers. Therefore, it is the policy of this agency that all officers have a sound knowledge of the legal requirements associated with obtaining a search warrant in order to prevent suppression of evidence, support the Constitutional rights of citizens and to maintain public confidence in this agency's mandate to carry out the police function in an ethical and legal manner.

## III. DEFINITION

*Search Warrant:* A written order, in the name of the people, signed by a magistrate or other judicial authority, directing a peace officer to search for specified personal property and bring it before the magistrate.

## IV. PROCEDURES

A. Legal Requirements for a Search Warrant

The Fourth Amendment to the U.S. Constitution[1] prohibits unreasonable searches. Officers conducting searches without a warrant—such as those noted below (III-A-I)—bear the burden of proving that the search was reasonable. Therefore, officers should consider obtaining a search warrant whenever time and circumstances permit. Some exceptions to the search warrant requirement include the following.[2]

1. Searches Incident to Arrest

   Searches of a person or the area within the immediate control of a person who has been lawfully arrested are permitted to secure weapons or evidence of a crime.

2. Emergencies

   Officers may conduct searches when they believe that a person is in need of immediate assistance under life-threatening conditions, when immediate action is necessary to protect the public from harm or when, for example, an officer encounters a homicide scene and needs to search for additional victims, protect vital evidence or pursue the perpetrator.

---

[1] Some state constitutions impose greater burdens upon law enforcement officers for obtaining and/or executing search warrants than does the U.S. Constitution. The requirements noted here conform with federal constitutional provisions. Officers should be familiar with any additional state constitutional requirements.

[2] Officers should refer to detailed directives and training materials of their agency relating to the execution of searches under each of these conditions.

Hayden Report 000006

3. Vehicle Search

A motor vehicle and containers found within may be searched when probable cause exists to believe that the vehicle may reasonably contain contraband or the fruits or instrumentalities of a crime.

4. Consent Searches

A search may be conducted pursuant to consent without a warrant and without probable cause to obtain a warrant. The consent must be voluntary, freely and intelligently given by an appropriate party and the search must be limited to the terms of the consent. Written consent should be sought whenever reasonably possible.

B. Legal Basis for Seeking a Warrant

1. In order to obtain a search warrant, an officer must be able to show probable cause to believe that specific evidence, contraband or fruits of a crime may be found at a particular location.

2. Specific facts establishing probable cause shall be set forth with clarity and specificity. Officers shall not rely solely upon personal opinion or unauthenticated third-party information or hearsay. Such facts may be based on

a. personal observation/knowledge of the officer; or

b. information from a reliable source.

3. When informants are used—particularly confidential informants—the reliability of the informant and information provided shall be specified. Whenever possible, officers shall corroborate informant information.

C. Affidavit Preparation

An affidavit supporting application for a search warrant shall be prepared on the designated agency form. The accuracy of the affidavit is vital to the validity of the search warrant; thus, officers shall ensure that the following information is clearly and completely specified.

1. Offense

The offense shall be described with reference to the criminal code section where possible.

2. Place or Thing to be Searched

The place or thing to be searched shall be described with specificity, and officers shall ensure that the warrant includes the specific reference(s). Where premises are to be searched, references should include

a. street number and apartment number if appropriate;

b. physical description of the premises;

c. legal description of the premises;

d. name of owner or occupant;

e. geographical location of the property;

f. map coordinates or distances from given reference points; and

g. photographs, maps or diagrams that help to specify the location in question.

3. Scope of the Search

Only those things described in the search warrant can be seized.[3] Therefore, the affidavit shall specify and officers shall ensure that the warrant includes the following:

a. All areas that officers desire to search shall be designated. In cases where officers wish to conduct a complete search of a home and its surroundings, the affidavit should specify a "premises" search and its "curtilage" and should identify any out-buildings such as garages, tool sheds or barns, where appropriate.

b. Motor vehicles known to be on the premises that may be searched should be specified.

c. Searches (other than frisks for weapons) of specific persons on the premises shall be referenced in the affidavit by name if possible.[4]

d. The specific items to be searched for shall be detailed.[5] Where the item may be dismantled (e.g. firearms), the warrant should authorize search for parts, pieces or components of that item.

e. Officers anticipating search of computers and related high-technology equipment shall consult a designated expert for appropriate language to use in the affidavit and procedures for seizure of hardware and software.

4. Time and Method of Search

a. A search warrant may be served at any time of the day or night as long as the affidavit provides good cause and permission is granted in the warrant.

b. Anticipatory search warrants may be sought when it can be shown that the evidence in question will be at a specific location at some time in the near future.

---

[3] Exceptions to this include items seized incident to a lawful arrest, items reasonably related to those specified in the warrant and evidence of another crime discovered in plain view during the search.

[4] If a warrant to search "all persons present" is sought, probable cause to believe that such persons have evidence of criminal activity on their person shall be specified.

[5] Seizure of evidentiary items that were known to be on the premises but were not listed in the warrant may result in invalidation of the seizure.

Hayden Report 000007

   c.  Officers may request a "no knock and announce" provision in the warrant when they have reason to believe that adherence to the knock-and-announce rule would endanger their safety or the safety of others, would enable wanted persons to escape or would likely result in the destruction of evidence before entry can be made.[6]

D. Review of the Warrant
Officers shall review search warrants issued by judicial authorities to ensure that they include all pertinent information set forth in the affidavit accurately and completely, and that the warrant has been properly signed. Officers shall not attempt to serve any warrant that is known to contain substantive or administrative errors.

E. Return on the Warrant
Officers shall observe statutory and administrative requirements regarding return on the warrant to include providing a receipt to the proper person for property taken, retention and security of property taken, and return of the warrant and delivery of the property inventory to the appropriate judicial authority within specified time limits.

F. Recording
A record shall be maintained of all warrants issued to this agency and actions taken in response to each.

G. Liaison with the Prosecutor's Office
Officers seeking warrants in unusual situations or where the seriousness, nature or legal complexity of the case dictates should consider reviewing the case with the prosecutor's office prior to seeking a search warrant.

Every effort has been made by the IACP National Law Enforcement Policy Center staff and advisory board to ensure that this document incorporates the most current information and contemporary professional judgment on this issue. However, law enforcement administrators should be cautioned that no "model" policy can meet all the needs of any given law enforcement agency. Each law enforcement agency operates in a unique environment of federal court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered. In addition, the formulation of specific agency policies must take into account local political and community perspectives and customs, prerogatives and demands; often divergent law enforcement strategies and philosophies; and the impact of varied agency resource capabilities among other factors.

This project was supported by a grant awarded by the Bureau of Justice Assistance. The Bureau of Justice Assistance is a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics, the National Institute of Justice, the Office of Juvenile Justice and Delinquency Prevention, the Office for Victims of Crime, and the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. Points of view or opinions in this document are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice or the IACP.

IACP National Law Enforcement Policy Center Staff: **Philip Lynn,** Manager; **Sara Dziejma,** Project Specialist; and **Vincent Talucci,** Executive Director, International Association of Chiefs of Police.

© Copyright 1995. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.

[6] State law varies widely with regard to the permissibility of and procedures surrounding no-knock searches.

3

Hayden Report 000008



EXECUTING SEARCH
VARRANTS

# Model Policy

| Effective Date February 2005 | | Number | |
|---|---|---|---|
| **Subject** Executing Search Warrants | | | |
| **Reference** | | **Special Instructions** | |
| **Distribution** | **Reevaluation Date** | | **No. Pages** 6 |

## I. PURPOSE

The purpose of this policy is to provide law enforcement officers with guidelines for the execution of a search warrant.

## II. POLICY

It is the policy of this law enforcement agency to provide techniques to accomplish a thorough and legal search; respect the constitutional rights of the person(s) the warrant is being served upon; minimize the level of intrusion experienced by those who are having their premises searched; provide for the safety for all persons concerned; and establish a record of the warrant execution process.

## III. DEFINITIONS

*Search Site:* The premises to be searched, as explicitly stated in the search warrant.

*Search Personnel:* Law enforcement officers and supporting personnel taking part in the execution of a search warrant.

*Evidence Collector:* Member of the search team responsible for the possession, packaging, sealing, and marking of all items seized.

*Case Agent:* The officer primarily responsible for the investigation, and preparing, planning, and implementing the search warrant.

*Tactical Coordinator:* The officer responsible for planning and supervising tactical operations to include dynamic entry and other tasks requiring special weapons and tactically trained officers.

*Protective Sweep:* Quick and limited search of premises incident to an arrest or service of a warrant performed in order to identify weapons or other

dangers to officers or others. Officers must be able to articulate a reasonable basis for conducting a protective sweep.

## IV. PROCEDURES

A. Warrant Service Planning

1. The case agent shall advise and receive approval from his or her supervisor before serving the warrant.

2. Selection of officers to serve the warrant shall be based on the officers' prior training and experience in conducting warrant service consistent with the demands of the warrant service in question.

3. The case agent shall ensure the complete preparation for serving the warrant in accordance with its nature and complexity and in consultation with the prosecutor if necessary. (A checklist of possible issues that may be considered in the planning process is attached to this policy for reference). These tasks include but are not limited to the following:

   a. Gather intelligence on the target site to include the structure, immediate area surrounding the structure, and surrounding neighborhood.

   b. Assess the capabilities and backgrounds of suspects to include criminal records, and history of weapons usage and potential for violence.

   c. Determine the best date and time for warrant execution. The warrant shall be executed as soon as practicable as defined by state law.

Hayden Report 000009

d. Determine equipment, team personnel, and any specialized team requirements.

e. Secure a warrant and ensure that it is thoroughly reviewed for accuracy, legal integrity, and completeness.

   (1) No-knock entries, where legally permitted and specified in the warrant, shall be conducted in accordance with state law.

   (2) The need for a no-knock warrant shall be clearly specified in the application and affidavit for a warrant.

   (3) Should nighttime service be anticipated or desired, justification shall be included in the affidavit and must be authorized in the search warrant.

   (4) The tactical team commander shall be consulted whenever a warrant calls for no-knock entry, nighttime entry, or service involving drugs or subjects deemed particularly dangerous.

B. Preparation for Executing the Warrant

1. The case agent and tactical coordinator, where required, work cooperatively to ensure proper preparation, planning, and service of the warrant. They shall detail procedures for executing the warrant to all team members in a warrant service briefing. The plan briefing shall be conducted by both the case agent and tactical coordinator and will include but not necessarily be limited to the following:

   a. The specific items subject to the search as defined in the warrant and any available information on their location.

   b. Information concerning the structure to be search and surroundings, to include floor plans where available, mockups, photos, and diagrams of the location identifying entrances, exits, obstructions, fortifications, garages, outlying buildings, suspect vehicles, and all other points of concern.

   c. Suspects and other occupants who may be present at the location—incorporating photos or sketches whenever possible—with emphasis on suspect threat potential, as well as the presence of children, the elderly or others who may not be involved with suspects.

   d. A complete review of the tactical plan to include the staging area, route of approach; individual assignments for entry, search, management of evidence, custody and handling of seized vehicles, custody of prisoners, and post-execution duties such

as securing the location and conducting surveillance on the site for additional suspects.

   e. Personnel, resources, or armament necessary for gaining entry, safety and security of officers, or for conducting the search.

   f. If a joint agency task force operation, all officers participating in the warrant service shall be present and identified as members of the warrant service team.

   g. Contingency plans for encountering hazardous materials, canines, booby traps, fortifications or related hazards; measures to take in case of injury or accident, to include the nearest location of trauma or emergency care facilities.

   h. Procedures for exiting the location under emergency conditions.

2. The entry team shall at all times include uniformed officers who shall be conspicuously present where the warrant is served. All non-uniformed officers shall be clearly identified as law enforcement officers by a distinctive jacket or some other conspicuous indicator of office.

3. All members of the search team shall wear body armor or ballistic vests as designated by the case agent.

4. Prior to execution of the warrant, the case agent shall attempt to determine if any circumstances have changed that make executing the search warrant undesirable at that time. Where possible, pre-search surveillance shall be conducted up to the point at which the warrant is executed.

5. The case agent shall make a final assessment of the warrant's accuracy in relationship to the location to be searched.

6. The case agent shall ensure that the entire search warrant execution process is documented until the search team leaves the premises. A written record shall be supported by photographs and, if practical, videotaping of the entire search process.

C. Entry Procedures

1. If an advance surveillance team is at the target site, radio contact shall be made to ensure that the warrant can be served according to plan.

2. The search personnel shall position themselves in accordance with the execution plan.

3. Notification

   a. An easily identifiable police officer shall knock and notify persons inside the search site, in a voice loud enough to be heard

Hayden Report 000010

inside the premises, that he/she is a police officer and has a warrant to search the premises, and that he/she demands entry to the premises at once.

b. Following the knock and announce, officers shall delay entry for an appropriate period of time based on the size and nature of the target site and time of day to provide a reasonable opportunity for an occupant to respond (normally between 15 and 20 seconds). If there is reasonable suspicion to believe that the delay would create unreasonable risks to the officers or others, inhibit the effectiveness of the investigation, or would permit the destruction of evidence, entry may be made as soon as practicable.

D. On-Premises Activities

1. Upon entry, the occupant shall be given a copy of the search warrant.

2. The supervisory officer shall ensure that a protective sweep of the site is performed immediately.

3. After the site has been secured, a photographic and/or videotape record of the premises shall be made prior to conducting the search. Search personnel shall then follow the plan that details the likely whereabouts of the items to be seized and the order of operation for conducting the search.

4. Items specified in the warrant may be searched for in places where they may reasonably be expected to be located and seized, as well as other items that are reasonably recognized as evidence.

5. An officer, designated in the plan, shall be responsible for collecting, preserving, and documenting all items seized until possession is transferred to the evidence custodian, laboratory, or other authority.

6. 6. Cash and currency taken as evidence shall be verified by a supervisor and be transported to a separate safe as designated by department policy.

7. Officers should exercise reasonable care in executing the warrant to minimize damage to property.

a. If damage occurs during an entry to premises that will be left vacant, and the damage may leave the premises vulnerable to security problems, arrangements shall be made to guard the premises until it can be secured.

b. If damage occurs, justification for actions that caused the damage and a detailed description of the nature and extent of the damage shall be documented. Photographs of the damage should be taken where possible.

c. If items are taken from the search site, an itemized receipt shall be provided to the resident/occupant, or in the absence of the same, left in a conspicuous location at the site.

d. In a timely manner upon conclusion of the warrant service, the case agent and tactical coordinator shall conduct a debriefing of all participating officers.

e. The case agent shall thereafter prepare and submit an after action report on the warrant service, results of actions taken, and recommendations for further investigative actions.

Every effort has been made by the IACP National Law Enforcement Policy Center staff and advisory board to ensure that this document incorporates the most current information and contemporary professional judgment on this issue. However, law enforcement administrators should be cautioned that no "model" policy can meet all the needs of any given law enforcement agency. Each law enforcement agency operates in a unique environment of federal court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered. In addition, the formulation of specific agency policies must take into account local political and community perspectives and customs, prerogatives and demands; often divergent law enforcement strategies and philosophies; and the impact of varied agency resource capabilities among other factors.

This project was supported by a grant awarded by the Bureau of Justice Assistance. The Bureau of Justice Assistance is a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics, the National Institute of Justice, the Office of Juvenile Justice and Delinquency Prevention, the Office for Victims of Crime, and the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. Points of view or opinions in this document are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice or the IACP.

IACP National Law Enforcement Policy Center Staff: Philip Lynn, Manager; Sara Dziejma, Project Specialist; and Vincent Talucci, Executive Director, International Association of Chiefs of Police.

Hayden Report 000011

© Copyright 2005. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.

4

# PRE-SEARCH PLANNING CHECKLIST

A. **Target Location Considerations**
1. Can the site be penetrated by gunfire?
2. Does the target site pose a fire hazard?
3. Are there underground parking facilities, attached garages, or additional buildings on the curtilage?
4. Where are the access points, on upper and lower levels, approach issues related to access points, and points of cover at approach point(s)?
5. Which way do doors and windows open?
6. Does the target site have an alarm system or warning device?
7. Is there evidence of reinforced entrances or fortifications?
8. Barred windows or doors
9. Backing mesh
10. Appearance of double locks on doors?
11. Are there any lookouts, and if so, where, how many, warning devices used, signals?
12. Evidence of children, such as bicycles or swings?
13. Evidence of elderly, disabled, handicapped or other uninvolved persons?
14. Unusual obstacles to entrance?
15. Can a reasonably accurate floor plan be obtained or constructed?
16. Attitude of neighbors: hostile or friendly?
17. Evidence of dogs? If so, how can they best be controlled?
18. Where is the electrical box and is it accessible?

B. **Target Suspect Considerations**
1. How many suspects and other persons are involved at the site at particular hours?
2. Are they involved in narcotics?
3. Is there gang involvement?
4. What is the background of the principal suspect(s)?
5. Are there recent photographs or sketches of the suspects?
6. What are the capabilities and backgrounds of suspects?
   a. Criminal record
   b. Previous method of operation
   c. Likelihood of resistance
   d. Physical and mental conditions of suspects
   e. Scope of criminal involvement of suspects
   f. Experience in martial arts
   g. Other abilities/capacities to resist arrest

7. What are the weapons background or suspects?
   a. Previous record of weapons use;
   b. Pattern of being armed (e.g., when and how)
   c. Military background
   d. Access to weapons
   e. Weapons registered to suspect(s)
   f. Knowledge of use of explosives
8. Access to transportation
   a. Registration and description of vehicles;
   b. Locations of involved vehicles for purpose of securing them during warrant service

C. **Preparation Considerations**
1. Establish date and best time of warrant execution
2. Establish staging area
3. Establish briefing time and location.
4. Additional tactical considerations:
   a. Prevention of escape
   b. Number of personnel needed and assignments
   c. Individual and team areas of responsibility
   d. Route to location and deployment route
   e. Security and communications at staging area
   f. Equipment requirements
5. Can the location be secured upon completion of warrant service or will officers be needed to safeguard the location following service?
6. Should a surveillance team be left behind following service to identify other persons who might enter the location?
7. What is the best method of entry and order in which personnel should enter?
8. Will diversionary tactics be needed?

D. **Tools, Equipment, and Specialized Personnel Considerations**
1. Based on the target location, suspects involved, and armament, should SWAT be used to perform the warrant service or assist? Special consideration in this matter should be given to:
   a. Specialized equipment needed for entry (e.g., torches, Shotlock)
   b. Whether the site is fortified, employs lookouts, booby traps, etc
   c. Whether the scope, complexity, and danger of service exceeds the training and experience of officers available

5

Hayden Report 000013

2. Raid jackets or other identification
3. Flashlights (even in daylight for darkened interiors)
4. Protective equipment
   a. Soft body armor (mandatory)
   b. Ballistic vests or shields
   c. Visors or goggles
   d. Gloves
5. First aid kits
6. Sledge hammer
7. Pry bars
8. Radios
   a. Tactical frequency needed and available
   b. Earpieces needed
   c. Batteries charged
9. Additional handcuffs, flexcuffs, or other restraints?
10. $CO_2$ fire extinguishers (for animal control and fires)?
11. Evidence bags, boxes, and related containers consistent with the evidentiary items that need to be collected?
12. Cameras and video recording equipment? Note:
    a. Consideration should be given to taking pre- and post- warrant execution photographs of the target location. Photos may be taken by available team members or where necessary, by evidence technicians or related forensic personnel.
    b. All photographs taken are departmental property and shall be retained in the lead detectives case folder and/or in evidence storage.
13. High-intensity lighting, as necessary
14. Canine teams
15. Ambulance or EMT standbys?
16. Fire department standby?
17. Air support
18. City, county, or state prosecutor

6



*ARREST*

# Model Policy

| Effective Date<br>August 2010 | | Number | |
|---|---|---|---|
| **Subject**<br>Arrest | | | |
| **Reference** | | Special Instructions | |
| **Distribution** | Reevaluation Date | | No. Pages<br>5 |

## I. PURPOSE

The purpose of this policy is to provide police officers with basic guidelines for conducting arrests.

## II. POLICY

It is the policy of this department that all arrests made by departmental personnel shall be conducted professionally and in accordance with established legal principles. In furtherance of this policy, all officers of this department are expected to be aware of, understand, and follow the laws governing arrest. This policy sets forth the fundamentals of the arrest procedure.

## III. DEFINITIONS

*Arrest:* Taking a person into custody.

*Arrest warrant:* A written order issued by a judge, magistrate, or other proper authority that commands a law enforcement officer to place a person under arrest.

*Probable cause for arrest:* When facts and circumstances within an officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution to believe that the suspect has committed, is committing, or is about to commit an offense.[1]

*Investigative detention:* Temporary detention for investigative purposes of a person based upon reasonable suspicion that the person has committed, is committing, or is about to commit a crime, under circumstances that do not amount to probable cause for arrest (also known as a *Terry* stop).

*Reasonable suspicion:* A particularized and objective basis, supported by specific and articulable facts, for suspecting a person of criminal activity;[2] the degree of suspicion of criminal activity that justifies an investigative detention but not an arrest.

*Citizen contact:* An encounter between a police officer and a citizen that may be initiated by the officer for any reason and during which the citizen is free to leave at any time.

*Exigent circumstances:* A situation in which a police officer must take immediate action to effectively make an arrest, search, or seizure for which probable cause exists, and thus may do so without first obtaining a warrant.[3] Such emergency situations are those that "would cause a reasonable person to believe that entry (or relevant prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts."[4]

*Weapons display:* Drawing a handgun or readying a shotgun or similar firearm for quick use if needed without pointing it at a suspect.

---

[1] *Michigan v. DeFillippo*, 443 U.S. 31 (1979).

[2] *Black's Law Dictionary*, 9th ed.(?), s.v. "Reasonable Suspicion."
[3] *Black's Law Dictionary*, 9th ed.(?), s.v. "Exigent Circumstances."
[4] *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.), cert. denied, 469 U.S. 824, 105 S. Ct. 101 (1984).

## IV.  PROCEDURES

  A.  Basis for Arrest

    Officers shall conduct arrests only when based upon either probable cause or an arrest warrant.

    1.  Probable Cause

      a.  Probable cause for arrest may be established by one of the following:

        (1)  Observations of the officer

        (2)  Information or evidence obtained during an investigative detention (*Terry* stop) or during a consensual citizen contact

        (3)  An identified citizen's specific complaint

        (4)  Information provided by a police informant of proven reliability

        (5)  Information provided by other law enforcement sources

      b.  Officers shall not make any arrest based solely upon the following:

        (1)  Information received from an anonymous source

        (2)  Mere suspicion, not amounting to probable cause

    2.  Arrest Warrants

      a.  Except when a warrantless arrest is justified by the existence of probable cause, arrests shall be made under an arrest warrant.

      b.  Arrest warrants shall be obtained from the judge, magistrate, or other legal authority empowered to issue such warrants in this jurisdiction.

      c.  Such warrants shall be in the form prescribed by the law of this jurisdiction and shall adequately identify the person to be arrested. The warrant shall also provide such other information as is required by law.

      d.  Any officer to whom an arrest warrant is delivered shall examine it to ensure that it is in proper form, that all information required by law is provided, and that the warrant appears to be valid. The officer shall also take note of any restrictions placed upon the arrest by the language of the warrant.

      e.  Once received, an arrest warrant shall be executed without delay, except as otherwise may be required by the circumstances of the case.

      f.  No arrest shall be made at a time or in a manner contrary to any express limitations included in the warrant.

      g.  In addition, no arrest shall be made in a manner or at a time or place prohibited by any of the following:

        (1)  Departmental regulation

        (2)  State or local legislation

        (3)  Applicable court decisions

    3.  Wherever possible, arrests shall be planned in advance in consultation with a supervisor or other experienced officers.

    4.  Where advance planning and consultation are not possible, the arrest shall be made in accordance with the arresting officer's departmental training in arrest procedures.

    5.  Arrests shall be made at a time and place and in a manner that will maximize the probability of a successful arrest and minimize the danger to officers and innocent bystanders.

    6.  Whenever possible, arrests shall be made in a location where the arrest will not pose a threat to the safety of the public (e.g., not in crowded places where bystanders may be injured should the arrestee offer resistance, particularly resistance involving the use of firearms).

    7.  No officer shall enter premises owned or occupied by a third person to make an arrest unless the officer has a separate legal basis for entering the premises. Such a basis may be provided by any of the following:

      a.  Possession by the officer of a search warrant for those premises

      b.  Consent of a person empowered by law to give such consent

      c.  Exigent circumstances

  B.  Use or Show of Force During Arrest

    1.  Officers shall use only that level of force that they reasonably believe is necessary to make an arrest in accordance with this department's use-of-force policy.

    2.  Weapons shall be displayed during an arrest only where it is reasonably believed necessary to ensure the safety of the officers or others and the successful completion of the arrest. Pointing a firearm at a suspect is governed by this agency's use of force policy.

  C.  Informing/*Mirandizing* Arrestees

    1.  The arresting officers shall identify themselves, inform the suspect of his or her arrest, and specify the charges for which the arrest is being made. Officers not in uniform shall display their shields and credentials when making the arrest to ensure proper identification.

2

Hayden Report 000016

2. Arrestees shall be advised of their *Miranda* rights before any questioning. Those rights should, whenever reasonably possible, be read verbatim from a standardized departmentally approved form.

3. A waiver of the *Miranda* rights must be obtained before any questioning of an arrestee can begin. The waiver must be unambiguous, that is, clearly stated or conveyed to interrogating officers. Failure to make an explicit, affirmative invocation of these rights, by remaining silent or through other ambiguous means, does not constitute an invocation of *Miranda* rights.

4. If the suspect waives *Miranda* rights, he or she shall be requested to sign the departmental waiver form. Failure to sign shall be noted on the form by the interrogating officer and does not, in itself, preclude officers from proceeding with an interrogation.

5. If the arrestee has not waived his or her *Miranda* rights, no questioning shall be conducted beyond that necessary to accomplish the booking procedure (name, address, and so forth).

6. If the arrestee declines to waive his or her *Miranda* right to counsel, or if the arrestee, after waiving that right, elects to reassert it, questioning must cease immediately and no further questioning may be conducted with regard to the crime for which the arrest was made, for any other crime, or by any other law enforcement agency unless
   a. an attorney representing the arrestee is present during questioning,
   b. the arrestee voluntarily initiates a further interview, or
   c. the arrestee has been subject to a break in custody of 14 days or more.

7. If the arrestee has not waived his or her *Miranda* rights, officers in the presence of the arrestee shall refrain from engaging in conversation among themselves that is calculated to elicit incriminating statements or admissions.

D. Arrestee Requests
Following the arrest, officers shall not permit arrestees to leave the immediate area of the arrest for personal purposes (e.g., to get a coat). In exceptional cases where it is deemed necessary to grant the arrestee's request, the arrestee shall first be searched for weapons and then be accompanied and closely monitored by the arresting or other officers.

E. Safety Precautions

1. Officers shall approach every arrest situation with the knowledge that any arrest, regardless of the offense involved may present an element of danger. Therefore, officers making arrests shall take all reasonable precautions to ensure their own safety.

2. Restraint of the Arrestee
   a. All arrested persons shall be handcuffed after being taken into custody, except as otherwise provided by departmental policy.
   b. Other lawful forms of restraint may be used when necessary and reasonably available for the safety of officers, prisoners, and others.
   c. Arrestees shall not be restrained in the four-point restraint unless the arrestee is uncontrollable by other means readily available. A four-point restraint is defined as the hands and ankles bound behind an individual's back. If a four-point restraint is deemed necessary, the arrestee shall be placed on his or her side once bound and monitored for potential physical problems such as difficulty in breathing.

3. Search Incident to Arrest
   a. Officers shall conduct a thorough search of the person arrested.
   b. Any criminal evidence discovered during the search of the arrestee's person shall be seized and preserved in accordance with standing departmental procedures.
   c. The search incident to arrest shall include not only the person of the arrestee, but also areas within the reach and control of the arrestee.
   d. Strip searches shall not be conducted in the field except under the most extreme circumstances and with prior approval from a supervisor. Any officer conducting a strip search of an arrestee in the field shall be prepared to justify the reasons for such a search and to document those reasons in a subsequent written report.[5]
   e. Body cavity searches shall not be conducted in the field.
   f. Whenever possible, searches incident to arrest shall be conducted by officers of the same gender as that of the person being searched.

---

[5] See the *Model Policy on Strip and Body Cavity Searches*, IACP National Law Enforcement Policy Center.

3

Hayden Report 000017

4. Protective sweeps of the premises or area where the arrest occurs shall be performed to ensure that no other persons or weapons are present that may represent a danger to the officers or the arrestee.

5. Post-Arrest Protection
   a. Officers shall be aware that, following an arrest, they are legally responsible for the safety of the arrestee, any victims present, and all bystanders. Therefore, officers shall take all steps reasonably necessary to protect
      (1) the officer from the arrestee,
      (2) victims and third persons from the arrestee, and
      (3) the arrestee from self-injury or injury by others.
   b. In particular, officers shall not allow victims into close proximity with the arrestee and shall prevent bystanders from approaching the arrestee until the arrestee is transported from the scene. In addition, officers shall not allow the arrestee out of their immediate presence for any reason until the arrestee is properly secured and transported.

F. Transportation of Arrestees[6]
   1. All arrestees shall be searched before being transported and whenever custody of the prisoner is transferred to another officer.
   2. All arrestees shall be handcuffed or otherwise restrained during transportation in accordance with departmental policy.
   3. Before an arrestee is transported, the area of the transporting vehicle to be occupied by the arrestee shall be searched for articles, including articles that may have been left behind by previous arrestees that may present a hazard to the transporting officers.
   4. Security devices in the transporting vehicle, such as door locks and security screens, shall be checked to be certain that they are operating properly.
   5. Officers shall seat arrestees in the vehicle in accordance with departmental policy.
   6. All arrestees shall be safely restrained with seatbelts.

G. Off-Duty Arrests
   (Note: See the *Model Policy on Off-Duty Arrests*, IACP National Law Enforcement Policy Center.)

H. Arrest of Juveniles
   All officers shall be aware that the arrest, the transportation, and the booking of juveniles are subject to special legal requirements. Officers shall be familiar with and observe these special requirements at all times when arresting juveniles.

I. Arrest of Department Members
   When arresting a member of their own department, officers shall take all precautions and follow all procedures as provided by departmental policy.

J. Citation in Lieu of Arrest
   Officers shall issue citations in lieu of arrest in all situations where citation is directed by law. In situations where citation is discretionary, officers shall consider the following:
   1. Whether the person is likely to disregard a citation
   2. Whether the person, if cited and released, is likely to cause harm to himself or herself or any other person
   3. Whether there are other factors that should be considered and are permitted by law and departmental policy

K. Release after Arrest
   1. If, after an arrest, it becomes apparent that there is no probable cause to hold the arrestee, the arrestee may be released, under the following conditions:
      a. The officer is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.
      b. The decision is made by a supervisor.
   2. If the person is released, police shall ensure that the person is released at a safe location and is not otherwise placed at risk as a result of the incident. If necessary, police should provide transportation for the released person to a safe location.
   3. Any record of arrest of a person released shall include a record of release that classifies the incident as a "detention" rather than an arrest.

L. Investigative Detentions
   1. Officers shall conduct an investigative detention based upon reasonable suspicion that the person detained has committed, is committing, or is about to commit a crime.
   2. Officers shall not prolong the investigative detention beyond the period necessary to accomplish the purpose of the detention. Officers shall be aware that prolonging an investigative detention unnecessarily may cause a court to view the detention as an unlawful seizure if probable cause does not exist for an arrest.

---

[6] See the *Model Policy on Transportation of Prisoners*, IACP National Law Enforcement Policy Center.

Hayden Report 000018

3. Officers shall take precautionary measures for their own safety during an investigative detention, including display of firearms or handcuffing the detainee. Officers shall be aware that unnecessary or prolonged display of firearms, handcuffing, and so on during the investigative detention may cause a court to view the detention as an actual arrest.

4. Officers who reasonably believe that a person under investigative detention may pose a threat to their safety shall conduct a frisk or pat-down search of the detainee's clothing for weapons. Officers shall not conduct any further search of an investigative detainee unless and until it appears that there is probable cause for the arrest of the detainee.

5. If during the investigative detention, it becomes apparent that there is probable cause to believe that the detainee has committed a criminal offense, the detainee shall then be placed under arrest, and the procedures for arrest set forth in this policy, including the procedures for a search incident to an arrest, shall then be followed by the arresting officers.

Every effort has been made by the IACP National Law Enforcement Policy Center staff and advisory board to ensure that this document incorporates the most current information and contemporary professional judgment on this issue. However, law enforcement administrators should be cautioned that no "model" policy can meet all the needs of any given law enforcement agency. Each law enforcement agency operates in a unique environment of federal court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered. In addition, the formulation of specific agency policies must take into account local political and community perspectives and customs, prerogatives and demands; often divergent law enforcement strategies and philosophies; and the impact of varied agency resource capabilities among other factors.

This project was supported by a grant awarded by the Bureau of Justice Assistance. The Bureau of Justice Assistance is a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics, the National Institute of Justice, the Office of Juvenile Justice and Delinquency Prevention, the Office for Victims of Crime, and the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. Points of view or opinions in this document are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice or the IACP.

IACP National Law Enforcement Policy Center Staff: Philip Lynn, Manager; Sara Dziejma, Project Specialist; and Vincent Talucci, Executive Director, International Association of Chiefs of Police.

© Copyright 2010. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.

Hayden Report 000019



*STANDARDS OF CONDUCT*

# Model Policy

| Effective Date | Number |
|---|---|
| August 1997 | |

| Subject | |
|---|---|
| **Standards of Conduct** | |

| Reference | Special Instructions |
|---|---|

| Distribution | Reevaluation Date | No. Pages |
|---|---|---|
| | | 4 |

## I. PURPOSE

It is the purpose of this policy to provide additional specificity to the standards of conduct embodied in the law enforcement officer's code of ethics and this agency's statement of values so that officers of this agency will better understand prohibitions and limitations pertaining to their conduct and activities while on and off duty. The rules of conduct set forth in this policy are not intended to serve as an exhaustive treatment of requirements, limitations, or prohibitions on officer conduct and activities established by this agency. Rather, they are intended to (1) alert officers to some of the more sensitive and often problematic matters involved in police conduct and ethics; (2) specify, where possible, actions and inactions that are contrary to and that conflict with the duties and responsibilities of law enforcement officers, and (3) guide officers in conducting themselves and their affairs in a manner that reflects standards of deportment and professionalism as required of law enforcement officers. Additional guidance on matters of conduct is provided in regard to specific policies, procedures, and directives disseminated by this agency and from officers' immediate supervisors and commanders.

## II. POLICY

Actions of officers that are inconsistent, incompatible, or in conflict with the values established by this agency negatively affect its reputation and that of its officers. Such actions and inactions thereby detract from the agency's overall ability to effectively and efficiently protect the public, maintain peace and order, and conduct other essential business.

Therefore, it is the policy of this law enforcement agency that officers conduct themselves at all times in a manner that reflects the ethical standards consistent with the rules contained in this policy and otherwise disseminated by this agency.

## III. DEFINITION

*Accountability*: In the context of this policy, accountability means the duty of all officers to truthfully acknowledge and explain their actions and decisions when requested to do so by an authorized member of this agency without deception or subterfuge.

## IV. PROCEDURES

A. General Conduct
1. Obedience to Laws, Regulations, and Orders
   a. Officers shall not violate any law or any agency policy, rule, or procedure.
   b. Officers shall obey all lawful orders.
2. Conduct Unbecoming an Officer
   Officers shall not engage in any conduct or activities on- or off-duty that reflect discredit on the officers, tend to bring this agency into disrepute, or impair its efficient and effective operation.
3. Accountability, Responsibility, and Discipline
   a. Officers are directly accountable for their actions through the chain of command, to this agency's chief executive officer.
   b. Officers shall cooperate fully in any internal administrative investigation conducted by this or other authorized agency and shall provide complete and accurate

information in regard to any issue under investigation.

c. Officers shall be accurate, complete, and truthful in all matters.

d. Officers shall accept responsibility for their actions without attempting to conceal, divert, or mitigate their true culpability nor shall they engage in efforts to thwart, influence, or interfere with an internal or criminal investigation.

e. Officers who are arrested, cited, or come under investigation for any criminal offense in this or another jurisdiction shall report this fact to a superior as soon as possible.

4. Conduct Toward Fellow Employees

a. Officers shall conduct themselves in a manner that will foster cooperation among members of this agency, showing respect, courtesy, and professionalism in their dealings with one another.

b. Employees shall not use language or engage in acts that demean, harass, or intimidate another person. (Members should refer to this agency's policy on "Harassment and Discrimination in the Workplace" for additional information on this subject)

5. Conduct Toward the Public

Officers shall conduct themselves toward the public in a civil and professional manner that connotes a service orientation and that will foster public respect and cooperation.

a. Officers shall treat violators with respect and courtesy, guard against employing an officious or overbearing attitude or language that may belittle, ridicule, or intimidate the individual, or act in a manner that unnecessarily delays the performance of their duty.

b. While recognizing the need to demonstrate authority and control over criminal suspects and prisoners, officers shall adhere to this agency's use-of-force policy and shall observe the civil rights and protect the well-being of those in their charge.

6. Use of Alcohol and Drugs

a. Officers shall not consume any intoxicating beverage while on duty unless authorized by a supervisor.

b. No alcoholic beverage shall be served or consumed on police premises or in vehicles owned by this jurisdiction.

c. An officer shall not be under the influence of alcohol in a public place, whether on- or off-duty.

d. No officer shall report for duty with the odor of alcoholic beverage on his or her breath.

e. No officer shall report to work or be on duty as a law enforcement officer when his or her judgment or physical condition has been impaired by alcohol, medication, or other substances.

f. Officers must report the use of any substance, prior to reporting for duty, that impairs their ability to perform as a law enforcement officer.

g. Supervisors shall order a drug or alcohol screening test when they have reasonable suspicion that an employee is using and/or under the influence of drugs or alcohol. Such screening shall conform to this agency's policy on employee drug-screening and testing.

7. Use of Tobacco Products

While on duty, a police officer shall not use a tobacco product unless in a designated area and while not conducting police business. Additionally, officers are not permitted to use tobacco products in a vehicle owned or maintained by this agency.

8. Abuse of Law Enforcement Powers or Positi

a. Officers shall report any unsolicited gifts, gratuities, or other items of value that they receive and shall provide a full report of the circumstances of their receipt if directed.

b. Officers shall not use their authority or position for financial gain, for obtaining or granting privileges or favors not otherwise available to them or others except as a private citizen, to avoid the consequences of illegal acts for themselves or for others, to barter, solicit, or accept any goods or services (to include, gratuities, gifts, discounts, rewards, loans, or fees) whether for the officer or for another.

c. Officers shall not purchase, convert to their own use, or have any claim to any found, impounded, abandoned, or recovered property, or any property held or released as evidence.

d. Officers shall not solicit or accept contributions for this agency or for any other agency, organization, event, or cause witʰ out the express consent of the agency chieᵗ executive or his or her designee.

2

Hayden Report 000021

e. Officers are prohibited from using information gained through their position as a law enforcement officer to advance financial or other private interests of themselves or others.

f. Officers who institute or reasonably expect to benefit from any civil action that arises from acts performed under color of authority shall inform their commanding officer.

9. Off-Duty Police Action

   a. Officers shall not use their police powers to resolve personal grievances (e.g., those involving the officer, family members, relatives, or friends) except under circumstances that would justify the use of self-defense, actions to prevent injury to another person, or when a serious offense has been committed that would justify an arrest. In all other cases, officers shall summon on-duty police personnel and a supervisor in cases where there is personal involvement that would reasonably require law enforcement intervention.

   b. Unless operating a marked police vehicle, off-duty officers shall not arrest or issue citations or warnings to traffic violators on sight, except when the violation is of such a dangerous nature that officers would reasonably be expected to take appropriate action.

10. Prohibited Associations and Establishments

   a. Arresting, investigating, or custodial officers shall not commence social relations with the spouse, immediate family member, or romantic companion of persons in the custody of this agency.

   b. Officers shall not knowingly commence or maintain a relationship with any person who is under criminal investigation, indictment, arrest, or incarceration by this or another police or criminal justice agency, and/or who has an open and notorious criminal reputation in the community (for example, persons whom they know, should know, or have reason to believe are involved in felonious activity), except as necessary to the performance of official duties, or where unavoidable because of familial relationships.

   c. Except in the performance of official duties, officers shall not knowingly enter any establishment in which the law of that jurisdiction is regularly violated.

d. Officers shall not knowingly join or participate in any organization that advocates, incites, or supports criminal acts or criminal conspiracies.

B. Public Statements, Appearances, and Endorsements

   1. Officers shall not, under color of authority,

      a. make any public statement that could be reasonably interpreted as having an adverse effect upon department morale, discipline, operation of the agency, or perception of the public;

      b. divulge or willfully permit to have divulged, any information gained by reason of their position, for anything other than its official, authorized purpose; or

      c. unless expressly authorized, make any statements, speeches, or appearances that could reasonably be considered to represent the views of this agency.

   2. Endorsements

      Officers may not, under color of authority, endorse, recommend, or facilitate the sale of commercial products or services. This includes but is not limited to the use of tow services, repair firms, attorneys, bail bondsmen, or other technical or professional services. It does not pertain to the endorsement of appropriate governmental services where there is a duty to make such endorsements.

C. Political Activity

   Officers shall be guided by state law regarding their participation and involvement in political activities. Where state law is silent on this issue, officers shall be guided by the following examples of prohibited political activities during working hours, while in uniform, or otherwise serving as a representative of this agency:

   1. Engage in any political activity;

   2. Place or affix any campaign literature on city/county-owned property;

   3. Solicit political funds from any member of this agency or another governmental agency of this jurisdiction;

   4. Solicit contributions, signatures, or other forms of support for political candidates, parties, or ballot measures on property owned by this jurisdiction;

   5. Use official authority to interfere with any election or interfere with the political actions of other employees or the general public;

   6. Favor or discriminate against any person seeking employment because of political opinions or affiliations;

3

Hayden Report 000022

7. Participate in any type of political activity while in uniform.

D. Expectations of Privacy

1. Officers shall not store personal information or belongings with an expectation of personal privacy in such places as lockers, desks, departmentally owned vehicles, file cabinets, computers, or similar areas that are under the control and management of this law enforcement agency. While this agency recognizes the need for officers to occasionally store personal items in such areas, officers should be aware that these and similar places may be inspected or otherwise entered—to meet operational needs, internal investigatory requirements, or for other reasons—at the direction of the agency chief executive or his or her designee.

2. No member of this agency shall maintain files or duplicate copies of official agency files in either manual or electronic formats at his or her place of residence or in other locations outside the confines of this agency without express permission.

Every effort has been made by the IACP National Law Enforcement Policy Center staff and advisory board to ensure that this document incorporates the most current information and contemporary professional judgment or this issue. However, law enforcement administrators should be cautioned that no "model" policy can meet all the needs of any given law enforcement agency. Each law enforcement agency operates in a unique environment of federal court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered. In addition, the formulation of specific agency policies must take into account local political and community perspectives and customs, prerogatives and demands; often divergent law enforcement strategies and philosophies; and the impact of varied agency resource capabilities among other factors.

This project was supported by a grant awarded by the Bureau of Justice Assistance. The Bureau of Justice Assistance is a component of the Office of Justice Programs, which also includes the Bureau of Justice Statistics, the National Institute of Justice, the Office of Juvenile Justice and Delinquency Prevention, the Office for Victims of Crime, and the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking. Points of view or opinions in this document are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice or the IACP.

IACP National Law Enforcement Policy Center Staff: Philip Lynn, Manager; Sara Dziejma, Project Specialist; and Vincent Talucci, Executive Director, International Association of Chiefs of Police.

© Copyright 1997. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.

Hayden Report 000023